ROODVOETS v. ANSCER.

1. INTOXICATING LIQUORS—TRANSFER OF LICENSES—CONSENTS REQUIRED.

The transfer of certain licenses issued under the liquor control act as amended is not contrary to public policy although the transfer is subject to the consent of the liquor control commission and approval of the local legislative body (Act No. 8, § 17, Pub. Acts 1933 [Ex. Sess.], as amended by Act No. 281, Pub. Acts 1937).

2. SAME—TRANSFER OF LICENSES—RENEWALS.

Fact that liquor licensee sought chattel mortgagor's indorsement of former's note at bank in order to procure funds with which to renew liquor license was evidence that latter was still interested in the license and would be interested in procuring a renewal of it, in suit by chattel mortgagor for specific performance of contract to transfer license to plaintiff upon default in making payments under the mortgage (Act No. 8, § 17, Pub. Acts 1933 [Ex. Sess.], as amended by Act No. 281, Pub. Acts 1937).

3. SPECIFIC PERFORMANCE—TRANSFER OF LIQUOR LICENSE—RENEWAL.

In suit for specific performance of a contract given to chattel mortgagee as additional security for payment of a note,

See 2 Restatement, Contracts, § 580 as to bargain in violation of statute, and § 369 as to specific performance where contrary to public welfare.

whereby mortgagor who was purchasing beer tavern from third parties agreed, upon default, to transfer liquor license to plaintiff, plaintiff was entitled to specific performance of transfer clause insofar as making application to liquor control commission therefor and for approval by the local legislative body of transfer of renewal license was involved since life of chattel mortgage extended beyond period of first license year and parties by their acts have shown that renewals were contemplated when contract was made (Act No. 8, § 17, Pub. Acts 1933 [Ex. Sess.], as amended by Act No. 281, Pub. Acts 1937).

4. SAME—TRANSFER OF A LIQUOR LICENSE—CONTEMPT.

In suit for specific performance of contract to transfer liquor license, plaintiff is restricted to remedy of contempt for failure to comply with terms of decree in his favor, provisions of trial court's decree that it should be filed with liquor control commission and local legislative body and defining the effect thereof being excepted from affirmance (Act No. 8, § 17, Pub. Acts 1933 [Ex. Sess.], as amended by Act No. 281, Pub. Acts 1937).

Appeal from Superior Court of Grand Rapids; Taylor (Thaddeus B.), J. Submitted January 7, 1944. (Docket No. 94, Calendar No. 42,429.) Decided April 3, 1944.

Bill by Edward Roodvoets against Clifford Anscer, individually and doing business as the House of Stein and doing business as the Cadet Bar, for specific performance of a contract to assign a class "C" liquor license. Decree for plaintiff. Defendant appeals. Affirmed.

*Wencel A. Milanowski* and *M. Thomas Ward,* for plaintiff.

*Linsey, Shivel, Phelps & Vander Wal,* for defendant.

REID, J. The bill in this case was filed to enforce specific performance of a contract entered into by

the parties dated September 18, 1941, reciting the impending purchase by defendant and appellant from Davidsons, third party owners, of the personal property, good will, et cetera, of a beer tavern called the House of Stein on Butterworth avenue in Grand Rapids, which was then subject to a chattel mortgage held by plaintiff. This contract provided for additional security for plaintiff reciting that "second party shall execute and deliver to first party a promissory note in the sum of $5,500, with interest at six per cent. per annum payable in instalments of $50 or more, at maker's option, each month, including principal and interest," and that defendant should also give a chattel mortgage to plaintiff to secure that amount, also same to retire former chattel mortgage and provide the purchase money to Davidsons and make certain other adjustments. The fifth clause of the agreement reads as follows:

"5. If second party shall fall into default upon said chattel mortgage note to first party and shall be unable to make payment thereon, second party agrees to execute and deliver to first party, or such person or persons as first party shall designate, a good and sufficient transfer and assignment of the liquor license now exercised at the 'House of Stein' as hereinbefore described; first party shall pay to second party, in that event, the sum of $1,000 for said license which is hereby agreed to be the full value thereof."

Plaintiff desires to specifically enforce this paragraph and to require that defendant shall make application to the liquor control commission and apply for the approval of the local legislative body thereto for a transfer. Upon filing the bill of complaint $1,000 in currency was tendered and upon the case being brought on for hearing the tender was paid in to the clerk of the court. The class C liquor li-

cense which was in existence in September, 1941, expired the following May. It was then renewed and it would require the transfer of a second renewal of that license to effectuate the transfer for which the $1,000 was tendered.

On the first renewal defendant did not have the money with which to pay for his 1942–1943 Michigan liquor control commission license and on April 29, 1942, plaintiff made arrangements with the Union Bank by which the defendant was advanced $636 for the payment of his license fees and necessary bonds, which money was obtained upon a note indorsed by plaintiff and on which defendant later made part payment with a balance still owing of $212. In October, 1942, defendant ceased to operate his business on Butterworth street and left there his personal property that was covered by the chattel mortgage. He has since that time operated a beer parlor at 136 Crescent street, N. W., in Grand Rapids. It was testified the amount still owing on the chattel mortgage was $5,306.80 and defendant does not dispute the amount.

Plaintiff does not desire to foreclose the chattel mortgage in this proceeding. He asks that defendant be required to make application for a transfer of the license which he now holds. Defendant claims that an agreement to transfer the license is contrary to public policy and void. This claim is untenable now in Michigan since the enactment of Act No. 8, § 17, Pub. Acts 1933 (Ex. Sess.), as amended by Act No. 281, Pub. Acts 1937 (Comp. Laws Supp. 1940, § 9209–32, Stat. Ann. 1943 Cum. Supp. § 18.988), which enacted that licenses may be transferred with the consent of the commission and certain licenses shall be approved by the local legislative body. The word "transferred" as used here implies and carries with it the making of an agreement of transfer.

It is therefore not illegal in Michigan to agree to make a transfer. It is simply subject to the consent of the commission and of the local legislative body.

Defendant in his brief cites *People* v. *Schafran,* 168 Mich. 324, 330:

"The licensee has no vested property right in his license; in fact, it would not be in the power of the legislature to make an irrepealable contract as to that which affects public morals or public health so as to limit the exercise of the public power over the subject matter."

That decision and others in Michigan and outside of Michigan appertain to the laws of the State where the license is not expressly made transferable, which, as above noted, is no longer the situation in the State of Michigan.

Defendant also stresses the words, "license now exercised at the House of Stein," and claims when a new license was obtained in May, 1942, following, and again renewed in May, 1943, the right to enforce a transfer expired, that paragraph 5 of the agreement heretofore recited cannot apply to the license now held by defendant.

On the important question therefore in this case of the applicability of the undertaking in paragraph 5 to the present license held by defendant, the finding by the trial judge is as follows:

"The present license was issued when the one expired that was mentioned in the contract. It cannot be imagined that in view of the chattel mortgage that the parties intended that the language of the contract would only apply to the license then in force and not to subsequent renewals thereof during the life of the mortgage. What the plaintiff contracted to pay $1,000 for was a contingency and is a contingency. What the defendant agreed to do was

to make application in the manner and form as required by the liquor control commission of the State to transfer the license to the plaintiff. He did the same thing in transferring the license that he held to Cliff's Tavern that this plaintiff is now requesting him to do in relation to the license held at the House of Stein. There is no reason why he should not or cannot do this. He has defaulted in his mortgage and has breached the terms of his contract.''

The act of Anscer in procuring Roodvoets to indorse his note at the first renewal of the license to obtain the money therefor implied that plaintiff was still interested in the license and would be interested in procuring a renewal of it. It seems that that is an act reflecting what the parties had in mind in making the contract and the trial judge in his opinion appropriately cites *McIntosh* v. *Groomes,* 227 Mich. 215, 220, and further cites *Lower* v. *Muskegon Heights Co-operative Dairy,* 251 Mich. 450, 456. The life of the chattel mortgage would extend far beyond the period of the first license year and even beyond the later and second renewal of it. Necessarily the agreement to transfer the license implied the agreement to transfer the renewal of it and succeeding renewals.

That is the finding and determination of the trial judge and his decree required the filing of applications for the transfer. The decree appealed from is affirmed excepting that part of the decree requiring filing of certified copies of the decree with State and local authorities and defining the effect thereof. Plaintiff will therefore be restricted to the remedy for contempt if defendant shall not comply with the order thus modified. The decree of this Court will so provide. Plaintiff shall have costs of both courts.

NORTH, C. J., and STARR, WIEST, BUTZEL, BUSHNELL, SHARPE, and BOYLES, JJ., concurred.