[Civ. No. 13621.   First Dist., Div. Two.   July 30, 1948.]

RICHARD R. FONG et al., Appellants, v. JOHN L. ROSSI, Respondent.

Wm. E. Ferriter and James C. Purcell for Appellants.

Leroy R. Goodrich for Respondent.

DOOLING, J.—Two actions for rent were consolidated for trial. The defendant cross-complained to establish a rescission on the ground, among others, of failure of consideration and to recover back $2,500 already paid as rent. Judgment went against plaintiffs and for defendant on the cross-complaint. From this judgment plaintiffs appeal.

The parties entered into a written contract of lease on May 14, 1946. The downstairs portion of the premises leased had been operated as a restaurant and respondent intended to remodel it and operate it as a night club. The property rented included "all of the furniture, furnishings, and fixtures and equipment." Upon conflicting evidence the trial court found that after the execution of the agreement the plaintiff Fong Wan removed from the premises a substantial part of the furniture, furnishings, fixtures and equipment without the defendant's consent. Whether this, standing alone, was a sufficiently material partial failure of consideration to support a rescission we need not determine since the court found a failure of consideration in another particular which the terms of the lease itself demonstrate was vital to the contract.

The court found that the plaintiff, Fong Wan, refused to transfer the liquor license appurtenant to the restaurant business unless the defendant would first buy a stock of liquors on the premises for $24,000. With respect to liquor licenses the lease contained the following provisions:

"17. The parties to this lease understand and agree that the principal income derived and to be derived from the operation of the said Shanghai Cafe is, and will be obtained from the conduct of business done at said place under the liquor licenses now possessed by the lessor and used at said premises.

"18. And it is further understood and agreed that liquor licenses in the City of Oakland are limited in number and are of great financial value and that when revoked, no liquor business of any kind can be done at the premises whereat the liquor licenses are revoked; and it is further understood and agreed that if for any reason beyond the control of the lessor, and resulting from any act, or thing done, or omitted to be done by the lessee or his agents or servants which shall result in the revocation of all or any of the liquor licenses by the Board of Equalization of the State of California, the lessor will suffer material damages in an amount which it is impossible to ascertain at the present time and therefore it is expressly understood and agreed that, in the event that the said Board of

Equalization should for any such reason during the term of this lease, and the occupany by the lessee, revoke any liquor license at said Shanghai Cafe, the lessee shall pay to the lessor within ten days after such order of revocation in lawful money of the United States the sum of Ten Thousand ($10,-000.00) Dollars, and it is expressly agreed that the decision of the Board of Equalization shall be final as between the parties to this lease and for the purposes of this paragraph; and in the event that the lessor should be required to bring any suit or action against the lessee to collect the said sum of Ten Thousand ($10,000.00) Dollars, the lessee shall pay to the lessor such sum as the court may find to be reasonable as and for attorneys' fees and costs of the plaintiff in bringing such suit or action.

"19. It is further understood and agreed that if such revocation or revocations shall occur, the lessee shall have thirty days within which to obtain other licenses covering all of the rights and privileges of the present licenses to be used by the lessor at said premises in which event the said sum of Ten Thousand ($10,000.00) Dollars shall not be paid.

"20. No liquor license now used in connection with the operation of the business upon said premises shall be transferred to any other location, and then at the end of the term of this lease, or the sooner termination thereof, the lessee agrees promptly to have said, or any renewed liquor licenses aforesaid, retransferred to the lessor, his heirs, executors, administrators or assigns."

Appellants argue that these provisions of the lease contain no promise to transfer the liquor licenses. We are satisfied that while no express promise to transfer the licenses is contained therein the plain tenor of the whole agreement is that the liquor licenses are to be transferred. It is agreed that the "principal income . . . will be obtained . . . under the liquor licenses now possessed by the lessor. . . ." Unless the transfer of the licenses was intended by the parties this agreement would be illegal. (*Teachout* v. *Bogy,* 175 Cal. 481 [166 P. 319].) Under section 7 of the Alcoholic Beverage Control Act (Stats. 1935, p. 1123; 2 Deering's Gen. Laws, 1944, Act 3796) a liquor license may be transferred with the approval of the Board of Equalization. Since a contract must be construed so as to give it a legal effect if possible (Civ. Code, § 1643) this lease must be construed to provide for the transfer of the licenses in the manner authorized by law. (*Leboire* v. *Black,*

84 Cal.App.2d 260, 262 [190 P.2d 634].) In paragraph 20 it is provided that at the end of the term "the lessee agrees promptly to have said, or any renewed liquor licenses aforesaid, *re-transferred* to the lessor"—a clear implication that the licenses are to be transferred to the lessee. If more is needed (and if these provisions of the lease be regarded as ambiguous) the broker who negotiated the lease for the lessors testified: "There was a part of these negotiations in relation to this matter with these liquor licenses. I guess that is the way it is supposed to be, that is, these liquor licenses would be transferred to Mr. Rossi. I wouldn't think the place could be run successfully, that is, profitably, without liquor licenses. I would say it is a very large part of the consideration for entering into this arrangement." Furthermore the lease was drawn by appellants' attorney and must be construed most strongly against them. (Civ. Code, § 1654.)

Appellant Fong Wan and respondent both testified that Fong Wan refused to transfer the licenses unless respondent agreed to buy this stock of liquor. Appellants had no legal right to impose this extracontractual burden on respondent as a condition of the performance of their agreement to transfer the licenses. On July 19, 1946, after fruitless efforts to obtain the transfer of the licenses, respondent served notice of rescission on appellants and surrendered the premises. On July 24, 1946, after receipt of the notice of rescission and the key to the premises, appellants by letter offered to cooperate in obtaining the transfer. The rescission was then complete and their offer came too late.

There is in the record the testimony of appellants' attorney that, before the notice of rescission was given, in a telephone conversation he offered the licenses and the executed transfer applications of the licensees to respondent. This respondent denied and we are bound by the trial court's finding on this conflicting evidence. The rescission was justified by the material failure of consideration found by the court. (Civ. Code, § 1689, subd. 2; 4 Cal.Jur. 785.)

The trial court found with regard to certain alterations made in the premises "that the expenditures made in good faith by defendant . . . were in excess of any damage suffered by plaintiffs by reason of anything done on said premises by defendant." This finding disposes of appellants' claim that the trial court did not do full equity between the parties or restore them to the *status quo*.

In view of the fact that the matters discussed fully support the judgment the sufficiency of the pleadings, evidence and findings in other particulars need not be considered.

Judgment affirmed.

Goodell, Acting P. J., and Griffin, J. pro tem., concurred.

A petition for a rehearing was denied August 28, 1948.