[Civ. No. 14684. First Dist., Div. One. June 14, 1951.]

MICHAEL SASO, JR., Respondent, v. JOSEPH A. FURTADO et al., Defendants; INEZ R. FURTADO, Appellant.

Arvin O. Robb for Appellant.

Edmund G. Brown, Attorney General, J. Albert Hutchinson, Deputy Attorney General, and Harry Gottesfeld, as Amici Curiae on behalf of Appellant.

O. H. Speciale for Respondent.

BRAY, J.—Appeal by defendant Inez Furtado from an order requiring her to execute an application for a transfer to plaintiff of a certain liquor license. The attorney general filed an amicus curiae brief on behalf of the State Board of Equalization. An additional amicus curiae brief was filed on behalf of appellant.

### QUESTIONS PRESENTED

1. Is the order void as being a judicial amendment of a prior judgment?

2. Is section 7.3 of the California Alcoholic Beverage Control Act retrospective as to rights accrued prior to its enactment?

3. Was the agreement void as being contrary to public policy?

### FACTS

January 24, 1945, plaintiff as lessor and defendants as lessees entered into a written lease of the ''Cheerio Club'' premises. As a part of the lease plaintiff transferred to defendants on-sale beer and wine licenses ''and it was stipulated in said lease that said licenses were to be used upon the premises and were not to be transferred to any other location and that at the expiration of the lease they were to be re-transferred back to Lessor without consideration. That Lessees' right to the licenses was to be only the right to use the same while Lessees of the premises.'' When the term of the lease expired defendants refused to surrender the premises or to retransfer the license* to plaintiff. Plaintiff sued for restitution of the premises and retransfer of the license. Judgment in his favor was entered against defendant Inez R. Furtado, as defendant Joe A. Furtado had transferred all his interest in the lease and license to her. She refused to retransfer the license, and published a notice of intended sale of the license to third parties. A hearing was had on an order to show cause why she should not be punished for contempt for failure to sign an application for the transfer of the license. The court found that the on-sale general liquor license then held by her ''is the evolution'' of the licenses held by plaintiff at the time of making the lease and the subsequent yearly renewals thereof in the name of defendants. Defendant Inez was ordered to execute an ''Application by Transferor'' of said license to plaintiff; she was forbidden to attempt to transfer said license to anyone other than plaintiff; and a commissioner was appointed to execute said application in the event of the failure of defendant Inez so to do.

### 1. *Is the Order an Amendment of the Judgment?*

Defendant contends that the statement in the order that the license then standing in her name is an evolution of the license mentioned in the lease and the order for the transfer of that license, constitutes an amendment of the judgment, and that as the judgment had become final, the court had no power to make such amendment. The judgment provided: ''3. That the liquor licenses described in said lease, to-wit: 'On Sale Distilled Spirits License' and 'On Sale Beer and Wine License' be returned to the said plaintiff; . . .''

---

*The two original licenses were merged into one.

The order is not an amendment of the judgment. The statement in the order that the present license is an evolution of the first one was not necessary to the order. In *Roodvoets* v. *Anscer* (1944), 308 Mich. 360 [13 N.W.2d 850], this very question was answered. There it was agreed that a liquor license located at the "House of Stein" would be transferred to the seller or person designated by him in the event of default in a chattel mortgage given to secure the purchase price. As in California, a new license had to be obtained each year. After renewal the holder moved the license to "Cliff's Tavern." He then defaulted. In an action to compel the transfer of the license in accordance with the agreement, the defendant made the same contention as defendant does here, that when the new license was issued the right to enforce a transfer ended. He also contended that this was particularly true after he moved the license from the House of Stein to Cliff's Tavern. As to these contentions the court said (p. 851) : " 'The present license was issued when the one expired that was mentioned in the contract. It cannot be imagined that in view of the chattel mortgage that the parties intended that the language of the contract would only apply to the license then in force and not to subsequent renewals thereof during the life of the mortgage. What the plaintiff contracted to pay $1000 for was a contingency and is a contingency. What the defendant agreed to do was to make application in the manner and form as required by the liquor control commission of the State to transfer the license to the plaintiff. He did the same thing in transferring the license that he held to Cliff's Tavern that this plaintiff is now requesting him to do in relation to the license held at the House of Stein. There is no reason why he should not or cannot do this. He has defaulted in his mortgage and has breached the terms of his contract.' "

While a liquor license must be renewed yearly and the license issued is a separate document from that issued the year before, it is considered the same license. The parties so treated it in the lease and the court so treated it in its judgment. The order, therefore, was not void.

2. *Section 7.3 of the Alcoholic Beverage Control Act Is not Retroactive.*

This section became effective October 1, 1949. The exact date when plaintiff's right to a retransfer of the license accrued is not set forth in the record. However, it is not im-

portant as the judgment ordering it was entered May 18, 1949, more than four months prior to the effective date of the statute. Prior to its enactment there was no express provision in the Alcoholic Beverage Control Act prohibiting an agreement to retransfer a liquor license. Section 7.3 provides: "No licensee shall enter into any agreement wherein he pledges the transfer of his license as security for a loan or as security for the fulfillment of any agreement. Each application for the transfer of a license must be accompanied by or contain a statement verified by both the transferor and the transferee specifically stating that the transfer application or proposed transfer is not made to satisfy the payment of a loan or to fulfill an agreement entered into more than ninety (90) days preceding the day on which the transfer application is filed with the board or to gain or establish a preference to or for any creditor of transferor or to defraud or injure any creditor of transferor. Said statement shall become part of the transfer application and any misrepresentation contained in said statement shall be considered the misrepresentation of a material fact."

It is the position of the defendant as well as the attorney general, that section 7.3 affects all agreements concerning liquor licenses whether entered into before or after the act took effect. However, we are not concerned with that question. The right of plaintiff to a transfer to him of the license accrued long prior to that time. Moreover, the adjudication of his right also took place prior to that time. So the question we have to determine is whether the Legislature intended by the enactment of section 7.3 to affect rights accrued prior thereto.

In referring to rights which accrued under the lease we have in mind that a liquor license is a privilege rather than a strict right, such as a right to deal in ordinary commodities (*State Bd. of Equalization* v. *Superior Court*, 5 Cal.App.2d 374 [42 P.2d 1076]); nor is it a contract (*idem*, p. 377; see, also, *Rosenblatt* v. *State Bd. of Pharmacy*, 69 Cal.App.2d 69 [158 P.2d 199]); its revocation does not violate the due process clause, and such revocation may be made without notice or hearing and without invading any constitutional guarantees (*State Bd. of Equalization* v. *Superior Court, supra*, p. 377). We are using the word "rights" in the sense of the rights or obligations in a license as between parties to a contract, which rights have not been affected by a statute although such rights could be so affected if the Legislature

intended to affect them. ". . . there is no inherent right in a citizen to sell intoxicants [citations]; and a license to do so is not a proprietary right within the meaning of the due process clause of the Constitution (Const., art. I, sec. 13), nor is it a contract [citation]; it is but a permit to do what would otherwise be unlawful, and consequently, a statute authorizing its revocation does not violate the due process clause, and it may be revoked without notice or hearing without invading any constitutional guarantees." (*State Bd. of Equalization* v. *Superior Court, supra,* p. 377.)

■ Assuming, therefore, that the Legislature had the right to make section 7.3 retroactive, did it do so to rights already accrued and adjudicated? There is nothing in the Alcoholic Beverage Control Act as a whole nor in section 7.3 which indicates that such was the legislative intent, other than, possibly, the requirement in that section that the application for transfer must contain a verified statement that the application or the proposed transfer is not made to fulfill an agreement entered into more than 90 days preceding the date of filing the application. It is interesting to note that there is no direct inhibition against an agreement to transfer which is more than 90 days old. The only direct inhibition is that no licensee shall enter into any agreement wherein he pledges the transfer of his license for a loan or as security for the fulfillment of any agreement. There is no inhibition against an agreement to transfer. However, in the procedural portion of the section, there is a requirement that the application for transfer state that any agreement on the subject is not more than 90 days old. This provision is not sufficient to indicate any intent on the part of the Legislature to deny a transfer to a person whose right to a transfer, at least as between him and the other party to the agreement, has already accrued. "It is a canon of interpretation that statutes are not to be given a retrospective operation unless it is clearly made to appear that such was the legislative intention." (*In re Cate,* 207 Cal. 443, 448 [279 P. 131].) "It is also an established rule that a statute is not to be construed so as to have a retroactive effect unless the intent that it is to be retroactive clearly appears from the statute itself." (*Estate of Potter,* 188 Cal. 55, 65 [204 P. 826].) To so hold, in the absence of evidence of a direct legislative intent to do so, would make the courts a party to a fraud. Here defendant entered into a then binding and legal agreement to retransfer the license upon the termination of the lease. The lease terminated and she

was immediately under the duty of retransferring the license. She did not do so. Court proceedings resulted and she was ordered by the court to do so. She disobeyed the court order. For us to hold that she can retain the license and refuse to do as ordered would reward her for her failure to keep her agreement and for disobedience of a court order. Certainly the 90-day statement required in the application is not sufficient evidence of a legislative intent to bring about such an absurd result.

*Castleman* v. *Scudder,* 81 Cal.App.2d 737 [185 P.2d 35], cited by the attorney general, is distinguishable from our case. There appellants were business opportunity brokers who had secured certain broker's agency contracts which did not have termination dates. After these contracts were obtained the Legislature adopted section 10301(f) of the Business and Professions Code which prohibited the practice of demanding or claiming a fee under such a type of contract. The Real Estate Commissioner revoked appellants' brokers' licenses because they demanded fees under these contracts. In a proceeding brought to mandamus the commissioner to restore the licenses the court held that the section applied to contracts executed before its adoption, pointing out that the mere holding of such an agreement was not grounds for revocation of licenses, but it was the practice of demanding or receiving fees under such agreements after the effective date of the act which supplied such grounds. It differs thereby from the statute in question here. The section obviously did not affect fees earned and accrued prior to its adoption. Again there the agreements were still in effect, and rights thereunder were to accrue in the future; whereas in our case the lease terminated, the rights accrued, and a judgment established those rights, all before the effective date of the act.

3. *The Agreement Was not Void.*

The attorney general, appellant and amicus curiae on behalf of appellant contend that the agreement to retransfer the license was void and contrary to public policy. They are able, however, to point out no provision of the Alcoholic Beverage Control Act which makes such agreement void nor any authority that it is contrary to public policy. Of course, the transfer is subject to the approval of the Board of Equalization. In all the arguments made by the above-mentioned parties they disregard this fact and attempt to construe the agreement and the judgment as an absolute right to a

transfer of the license, rather than such a right subject to the exercise of the discretion of the board as in all other cases. The contention that agreements to transfer are in violation of the act is refuted by its very terms. Thus section 7 provides: "Each license issued under this act is separate and distinct and *shall be transferable* from the person to whom issued or *by whom renewed* to another person *upon the approval of the board* . . ." (Emphasis added.) Thus the license or its renewal may be transferred (always, of course, upon the approval of the board). Section 21.1 provides for an investigation of the proposed transferee. The attorney general's position seems to be that the license privileges granted by the act are not transferable by the independent act of the licensee. We agree with that position. The person to whom the licensee desires to transfer the license must make an independent application and must be qualified in every respect. The attorney general contends that the act always proscribed executory agreements to transfer, and hence the Legislature in adopting section 7.3 did not change the rule. However, he is unable to point out any provision of the act supporting his position. The wording of section 7.3 does not bear out the contention that the Legislature by its adoption was not changing the act as it previously stood, but merely accepting the administrative interpretation of it. The wording indicates that the Legislature was damming a hole which had heretofore been left opening the dyke. The attorney general refers to three opinions rendered by him which he contends constitute an administrative interpretation of the act which the Legislature adopted by the enactment of section 7.3. The first opinion, N. S. 3183, is dated January 8, 1941. It referred to a situation in which the widow of a deceased licensee contended that she was entitled to a transfer of the license to her as it was the community property of herself and the licensee. It pointed out that section 7 of the act provides that each license "shall be issued to a specific person"; therefore the issuance of such license to the husband was not an issuance to the wife. It concluded that the surviving wife "may secure a transfer to her of a license only in the event she could secure such license for the premises in question from a stranger.". There is nothing in this opinion that supports the position taken here. It is interesting to note this language in the opinion: "Recent amendments to section 7 of the Act permitting transfers of licenses did not change the personal nature of the license, but rather extended to the

licensee an additional privilege—*that of designating his successor*, who, if acceptable to the Board and eligible to a license, may have all privileges of the license transferred to himself upon making such application as required by the rules of the Board.'' (Emphasis added.)

The second opinion, N. S. 3405, dated April 3, 1941, is likewise not in point. There the attorney general merely advised that the determination of the court as to who was entitled to request a transfer of the liquor license was binding on the board. There Besaw leased to Kileys certain property. Evidently the lease provided that on a failure to renew the lease the license should be retransferred to Besaw. However, there was a provision which stated that if the lessor sold the property the license would remain the property of the lessee. Besaw sold the property, and thereby the license vested in Kileys. Later Kileys applied for a transfer of the license to one Reese. The board made such transfer. Besaw attempted to transfer the license to a Mrs. Piper, who sued in the Tuolumne superior court to compel a transfer of the license to her. The court held that by the sale, the license vested in Kileys and that Mrs. Piper had no interest in the license as Besaw had nothing to transfer. Mrs. Piper applied to the board for a transfer to her. The attorney general advised the board that the board was warranted in disregarding the protests of Mrs. Piper and issuing the license to Reese because of the court's conclusion that under the terms of the lease she was not entitled to it. Actually the attorney general's opinion on this point supports our conclusion here.

The third opinion, 287 (47/103), dated June 9, 1947, deals with the question of whether, where certain premises were leased and the lessee obtained a transfer of the liquor license from the lessor to himself, the Board of Equalization was required to recognize an agreement of the lessee to retransfer the license to the lessor. The attorney general concluded (1) executory agreements for the transfer of alcoholic beverage licenses are not binding on the board (we agree with this interpretation to the extent that the Board of Equalization may use its discretion as in all other applications for transfer of license) ; (2) the board may act only upon an adequate, formal application for license by the proposed transferee-licensee (we agree with this interpretation) ; (3) agreements to retransfer such licenses or for the hypothecation thereof which purport to provide for any control by the person in whose favor such contract is made over the license or the licensee's licensed

activities are contrary to the Alcoholic Beverage Control Act (we do not agree with this interpretation so far as it may affect agreements to transfer or retransfer licenses*). An examination of the reasoning in this opinion shows that it is based upon the theory that the agreement to retransfer or the hypothecation attempts to disregard the right of the board to use its discretion as in other cases. We agree that an agreement which purports to do that would be violative of the Alcoholic Beverage Control Act. But there must be read into these agreements the condition that the transfers must be subject to the approval of the board and subject to its rules. As said in *Leboire* v. *Black*, 84 Cal.App.2d 260, 262 [190 P.2d 634] : ''We are satisfied that the agreement with regard to transfer of a liquor license should be construed in connection with section 7 of the Alcoholic Beverage Control Act, Statutes 1935, page 1123; 2 Deering's General Laws, 1944, Act 3796, as intended to be subject to the approval of the Board of Equalization as therein provided. So construed the agreement is a legal one.'' Another case in which a transfer of liquor licenses under the Alcoholic Beverage Control Act was held legal is *Fong* v. *Rossi*, 87 Cal.App.2d 20, 22 [195 P.2d 854] : ''Appellants argue that these provisions of the lease contain no promise to transfer the liquor licenses. We are satisfied that while no express promise to transfer the licenses is contained therein the plain tenor of the whole agreement is that the liquor licenses are to be transferred. It is agreed that the 'principal income . . . will be obtained . . . under the liquor licenses now possessed by the lessor . . .' Unless the transfer of the licenses was intended by the parties this agreement would be illegal. (*Teachout* v. *Bogy*, 175 Cal. 481 [166 P. 319].) Under section 7 of the Alcoholic Beverage Control Act (Stats. 1935, p. 1123; 2 Deering's Gen. Laws, 1944, Act 3796] a liquor license may be transferred with the approval of the Board of Equalization. Since a contract must be construed so as to give it a legal effect if possible (Civ. Code, § 1643) this lease must be construed to provide for the transfer of the licenses in the manner authorized by law.'' There is nothing in any of the attorney general's opinions which attempts to set forth the rights under these agreements as between the parties themselves. The opinions are directed to the situation between the parties and the board only. ▮ If there is anything in the attorney general's opinions to the ef-

---

*We are, of course, discussing the situation as it existed prior to the adoption of section 7.3.

fect that prior to the enactment of section 7.3 an agreement of the kind in question here was prohibited by the Alcoholic Beverage Control Act, such construction of the statute is not warranted by the statute itself. ". . . an erroneous administrative construction does not govern the interpretation of a statute, even though the statute is subsequently reenacted without change." (*Whitcomb Hotel, Inc.* v. *California Emp. Com.*, 24 Cal.2d 753, 757 [151 P.2d 233, 155 A.L.R. 405].)

As the agreement to retransfer as between the parties is not prohibited by the act, and as such agreements must be viewed in the light of the act which makes the transfer of all licenses subject to the discretion of the board, there is nothing illegal in such an agreement, nor is it in any way contrary to public policy.

*Teachout* v. *Bogy*, 175 Cal. 481 [166 P. 319], has no application here. In that case the licensee agreed to sell to Bogy Bros. a certain lease and a saloon license issued by the city of Los Angeles. The lease and license were to be signed in blank and left in escrow until the purchase price of $16,500 was paid at the rate of $200 per month. Bogy Bros., in the meantime, were to carry on a saloon business on the premises under the license without any transfer thereof. The court held that as a saloon license is personal to the licensee and authorizes him alone to carry on the business, the agreement to allow the purchaser to conduct the business under that license was really an agreement to carry on the saloon business in violation of the law and hence void. In our case there is no agreement to carry on the liquor business with someone else's license. Here it is simply an agreement to retransfer the license, subject, of course, to the board's rules. Nor does the case of *Hooper* v. *Barranti*, 81 Cal.App.2d 570 [184 P.2d 688], apply. There the agreement provided for the conduct of a partnership liquor business under the license of one of the individual partners. This court properly held that such an agreement was contrary to public policy as the Alcoholic Beverage Control Act prohibits any person from conducting a liquor business without a license issued to such person and "person" is defined in section 2 of the act to include a partnership.

While decisions from other states are not always determinative due to the difference in their license laws from ours, the Michigan case of *Roodvoets* v. *Anscer, supra* (13 N.W.2d 850), is pertinent, as the Michigan law was similar to our Alcoholic

Beverage Control Act before the adoption of section 7.3. There, as here, the liquor control act provided that licenses could be transferred with the consent of the commission. As in our case there was no other provision on the subject of transfer. One of the provisions of an agreement for the sale of a beer tavern provided that in the event of default upon a chattel mortgage note, the buyer agreed to transfer to the chattel mortgage holder or person selected by him the liquor license of the "House of Stein." Upon default, an action was brought to compel such transfer. As here, the defense raised was that an agreement to transfer the license is contrary to public policy and void. The court held that the statute providing that licenses might be transferred implied and carried with it the making of an agreement to transfer. Thus it was not illegal to agree to make a transfer. It was simply subject to the consent of the commission.

Defendant cites several cases in New Jersey to the effect that liquor licenses are not transferable. However, the New Jersey statute expressly prohibits such transfers.

 Prior to the filing of suit herein defendant signed an application to transfer the license to Mitchell and Raffanti. The attorney general states that there is pending in the Superior Court of Sacramento County a proceeding brought by said Mitchell and Raffanti against the commissioner appointed in our case to sign the application to transfer, and the State Board of Equalization to compel a transfer of the license to them. The attorney general is concerned, in view of that litigation, whether the board is required to recognize the status of plaintiff in this case. The attorney general's opinion N. S. 3405 above mentioned answers his concern. There he advised the board to accept the court's determination as to who was the proper person to consider as transferee. The board is required to recognize plaintiff as the transferee-applicant for a license, and the commissioner as the transferor. (Apparently defendant has refused to sign the application.)

The order is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 9, 1951.