[Civ. No. 14547.   First Dist., Div. One   June 14, 1951.]

RALPH  D.  CAMPBELL  et al., Respondents, v. RITA
BAUER et al., Appellants.

Hardy, Carley & Brenner for Appellants.

Crist, Stafford & Peters and John M. Donegan for Respondents.

BRAY, J—Defendants* appeal from a judgment granting specific performance of an agreement to transfer an on-sale general liquor license, pursuant to the terms of a limited partnership agreement.

#### QUESTIONS PRESENTED
They are practically the same as those this day decided in *Michael Saso, Jr.* v. *Joe A. Furtado and Inez R. Furtado, post,* p. 759 [232 P.2d 583]. The main difference between the facts of this case and those of the Saso case is that here the license was pledged as security for the payment of a loan, while in the Saso case the agreement was to retransfer the license to the lessor upon the termination of a lease.

#### FACTS
The facts are not in dispute. March 31, 1948, plaintiffs loaned $13,322.07 to Barbershoppers' Redwood Lodge, Inc. Defendants as general partners operated a restaurant and bar in Palo Alto known as the Circus Room. Barbershoppers "went broke" and made an assignment for the benefit of creditors. Defendants bought its assets for $26,750. From this sum plaintiffs received $4,322.07 of the indebtedness due from Barbershoppers, leaving a balance of $9,000 owing. In order to enable defendants to pay off all Barbershoppers creditors, plaintiffs agreed to lend defendants certain moneys on the same terms and conditions as its original loan to Bar-

---

*The members of the State Board of Equalization were joined as defendants. Apparently they were never served. The record shows no further proceedings as to them, and hence "defendants" herein refer to Rita Bauer and Nell Tussing only.

bershoppers, namely, a limited partnership agreement on the liquor license, a chattel mortgage on the fixtures, and a deed of trust on real property owned by a third party. As the Barbershoppers had defaulted, plaintiffs were entitled to a transfer of the liquor license to them. But to save having the license transferred by Barbershoppers to plaintiffs and then a transfer from plaintiffs to defendants, which would have cost an additional fee, Barbershoppers' assignee for the benefit of creditors transferred the license directly to defendants. Defendants executed a promissory note to plaintiffs for $10,944. Plaintiffs took the same security as they held from Barbershoppers. Thus plaintiffs appeared as limited partners on the liquor license of both the Barbershoppers and defendants. Defendants were the general partners and plaintiffs the limited partners. This limited partnership was merely to secure the payment of the loan. The agreement provided that plaintiffs transferred to defendants their interest in the license and that a limited partnership should exist until all sums payable under the promissory note were paid. In the event of default defendants' interest in the license should cease, and defendants "would execute and transfer all of their interest" in said license to the plaintiffs upon demand. In July, 1949, defendants defaulted. There is a conflict in the evidence as to when demand for a transfer was made. The court found that plaintiffs made demand by filing this action. The complaint was filed September 16, 1949, and the amended complaint on September 22. (The effective date of section 7.3 of the Alcoholic Beverage Control Act hereafter discussed was October 1.) On June 20, 1949, defendant Tussing signed an application for transfer of the license to plaintiffs. Defendant Bauer refused to sign it.

<h2 style="text-align:center">FINDINGS AND JUDGMENT</h2>

The court found, among other matters, that the signing of the application for transfer by defendant Tussing, one of the general partners, constituted a valid transfer of the license to plaintiffs; that the limited partnership agreement was not illegal or unenforceable when entered into, and that the 1949 amendment to the Alcoholic Beverage Control Act making the reservation of an interest in a liquor license illegal and unenforceable is unconstitutional as impairing the obligation of a contract insofar as the amendment applied to the agreement. The court then entered judgment that defendants have no interest in the license, restrained them from transferring the license to others than plaintiffs, and ordered defendants to

execute such applications and instruments as might be necessary to effectively transfer the license to plaintiff. It appointed a commissioner to execute the same in the event defendants refused to do so.

### 1. *Is Section 7.3 Retroactive?*

██ Defendants contend that it is and that, therefore, an agreement giving the holder of a promissory note an interest in a liquor license cannot be specifically enforced after the effective date of the act. Plaintiff's right, as between the parties, to a transfer of the license accrued at the time of filing the action herein, if not before. That was prior to the effective date of the act. We held in the Saso case, *supra,* that the act did not affect agreements where the right to a liquor license had accrued prior to the enactment of the section. In using the word "accrued" we are not referring to it in the strict sense as used in contracts not subject to regulation under the police power. (See *Gregory* v. *Hecke,* 73 Cal.App. 268 [238 P. 787].) We are merely referring to a change of rights as between the parties. Section 7.3 does not apply here.

### 2. *Constitutionality of the Act.*

██ The court assumed that the act was retroactive and then held that it was unconstitutional as impairing the obligation of the contract theretofore entered into. As the court erred in its assumption, the constitutionality of the act need not be determined here. While the reasons upon which the court upheld the right to transfer were wrong, the result was correct. "If the judgment . . . is right upon any theory of law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion." (2 Cal.Jur. 808-809, § 476, citing numerous authorities.) This rule is well established. (See *Sears* v. *Rule,* 27 Cal.2d 131, 140 [163 P. 2d 443].)

#### CONTENTIONS OF DEFENDANTS

Practically all the contentions made by defendants here were made and considered in the Saso case, *supra.* ██ Defendants here contend that the court cannot order specific performance of the transfer agreement because defendants cannot make, as required by section 7.3, a sworn statement that the application was not made (1) to satisfy the payment of a loan and (2) to fulfill an agreement entered into more than 90 days prior to the application, or (3) to establish a preference for a creditor. In view of the fact that plaintiffs'

right to have the application made by defendants had accrued (it actually was made by one of the partners; however, it was not sufficient, as section 10 of the Alcoholic Beverage Control Act requires the signature of all partners) prior to the effective date of section 7.3, such a sworn statement is not necessary, first, because the application is made under the order of court, and secondly, because equity regards that as done which ought to be done. ''That which ought to have been done is to be regarded as done, in favor of him to whom, and against him from whom, performance is due.'' (Civ. Code, § 3529.) Thirdly, to permit defendants to retain the advantage of their own wrong would be unconscionable.

While the signing of the application to transfer does not of itself constitute a transfer as the consent of the Board of Equalization must be obtained, such signing by the transferor constitutes a compliance with the transferor's agreement to transfer. It should have been done in this case and it must therefore be regarded as done. It is then up to the Board of Equalization to determine as it would in any other case whether the transfer will be permitted.

While defendants' main defense is the claim of the application of section 7.3 to the agreement, they also contend that the agreement by which the license became security for the loan was against public policy. This contention is answered in the Saso case. While the agreement in that case did not pledge the license as security for a loan, we find nothing in the Alcoholic Beverage Control Act prior to the adoption of section 7.3 which in anywise prohibited the use of a license as security. So far as public policy is concerned, there is no substantial difference between an agreement making a liquor license security and an agreement of the type approved in *Fong* v. *Rossi*, 87 Cal.App.2d 20 [195 P. 2d 854].

Defendants contend that there was no consideration for the agreement here. The court found that the transfer of plaintiffs' interest in the license at the time of making the loan was adequate consideration, and that the agreement of limited partnership was additional security for the loan. The evidence well supports this finding.

Supporting their contention that the court has no power to enforce the agreement after the adoption of section 7.3, defendants refer to three cases. The first is *V. & S. Bottle Co.* v. *Mountain Gas Co.* (1918), 261 Pa. 523 [104 A. 667]. There the gas company had agreed to furnish plaintiff natural gas at a certain price for 10 years. Before the expiration of the

term certain provisions of the Public Service Act were enacted which prohibited the special privileges which this contract gave. The court held that thereby the agreement was rendered inoperative from the time the act took effect. The reasoning is not given. However, the case does not hold, as claimed, that a court cannot enforce the rights actually accrued prior to the act, such as the right to recover at the contract rate for gas theretofore delivered. In fact the decision refers only to the agreement becoming inoperative after the act went into effect. The second case is *Dorr* v. *Chesapeake & O. Ry. Co.* (1916), 78 W.Va. 150 [88 S.E. 666, L.R.A. 1916E 622]. There in 1900 Dorr, for certain considerations expressed in the deed, conveyed certain land to the railroad in settlement of a condemnation action. He claimed also an oral agreement by which the railroad agreed to give him an annual pass for life. In 1906 Congress enacted a statute prohibiting the giving of free passes, and providing penalties for the giving or acceptance of such a pass. The railroad thereafter refused to give Dorr a pass. He brought suit for specific performance of the oral agreement. In denying the relief the court held that equity would not lend its aid to enforce an agreement, the result of which would be a violation of an act of Congress. The third case, similar to the Dorr case, is *Louisville & Nashville R. R.* v. *Mottley,* 219 U.S. 467 [31 S. Ct. 265, 55 L.Ed. 297]. In 1871 Mottley released all claims he had against the railroad for injuries received due to its negligence in exchange for its agreement to give him an annual pass for life. As in the Dorr case, the court refused specific performance of the agreement after the passage of the act of Congress of 1906, because the issuance and acceptance of passes thereafter would be a violation of that act. All of these cases differ from ours in this, that there the agreements attempted to be performed were continuing and there were acts to be done thereunder which would be in violation of the then law. In the Mountain Gas company case, gas was still to be supplied at a rate in violation of the act. In the Dorr and Mottley cases, annual passes were still to be supplied in violation of the act. In our case there is nothing further to be performed, as the only act, that of making the application, is deemed to have been done prior to the enactment of the statute.

The judgment is affirmed.

Peters, P. J., and Agee, J. pro tem., concurred.