Carmen **CITRIGNO** and Mary Citrigno, Appellants,

v.

**Ralph E. WILLIAMS,** Trustee of the Estate of The Blue Note, a limited partnership composed of Alfred P. Hall and Aline P. Woodhouse, General Partners; and Ida L. Mengola and Anthony Pampalone, Limited Partners; and Alfred P. Hall, Individually, Bankrupts, Appellee.

No. 15351.

United States Court of Appeals Ninth Circuit.

May 26, 1958.

Albert J. Ruffo, Ruffo & Wayland, San Jose, Cal., for appellants.

Shapro & Rothschild, James M. Conners, Daniel Aronson, Jr., San Francisco, Cal., for appellee.

Before FEE and CHAMBERS, Circuit Judges, and WALSH, District Judge.

WALSH, District Judge.

This appeal raises issues as to the correctness of rulings by a referee in bankruptcy and a reviewing district judge regarding the disposition to be made of proceeds resulting from the sale by a trustee in bankruptcy of a spirituous liquor license.

In July, 1945, appellants, as lessors, entered into a written lease agreement with Anthony Pampalone and Joseph Cardona, as lessees (hereinafter referred to as "the original lessees"), whereunder appellants demised to the original lessees certain business premises [1] in San Jose, California, for a term commencing on October 13, 1945 and extending for five years, with option in lessees to renew for an additional five years. In connection with the lease, appellants transferred or caused to be transferred to the original lessees a spirituous liquor license issued by the State of California authorizing the operation of a bar and the sale of distilled spirits, beer, and wine upon the leased premises. Along with other engagements in the lease, the original lessees covenanted that they would not transfer the license from the leased premises and that, upon the termination of the lease, they would execute such papers as might be required to effect the transfer of the license to appellants. Further, the original lessees contracted in the lease to assure appellants of the reassignment of the license by delivering to appellants their promissory note in the sum of $5,000, secured by a deed of trust. The lease expressly prohibited any assignment of the lease or subletting of the demised premises, or any part thereof, by the original lessees.

Notwithstanding the restriction in the lease against assignment, on June 8, 1953, the original lessees made a written agreement with Alfred P. Hall and Aline P. Woodhouse (hereinafter referred to as "the assignees"), whereby the original lessees assigned to the assignees all their right, title and interest in and to the lease and agreed to cause the liquor license to be transferred to the assignees. The agreement provided that the license should remain the property of appellants and, in that connection, that the license should be issued by the licensing authorities to a limited partnership composed of the assignees, as general partners, and the original lessees, as limited partners. The agreement recited that the creation of the limited partnership and the transfer of the liquor license into its name were provided for the specific purpose of accomplishing the retransfer of the license to appellants upon termination of the lease. The agreement bound the assignees to carry out all of the obligations promised in the lease to be performed by the original lessees, including the retransfer of the license to appellants upon termination of the lease.

Concurrently with the execution of the agreement last mentioned, the assignees entered into another written agreement with the appellants whereunder: (1) appellants consented to the assignment of the lease to the assignees; (2) the assignees assumed and agreed to perform all obligations created and existing by reason of the lease; (3) the assignees recognized and acknowledged their obligation to cause retransfer of the liquor license to appellants upon termination of the lease; and (4) the release of the original lessees from any of their obligations under the lease was negatived and the assignees agreed to be and become jointly and severally liable with the original lessees for the performance of all covenants and obligations created by virtue of the lease.

---

1. The lease also included machinery, fixtures, implements, utensils, and other personal property then located on the demised premises and which had been theretofore used by appellants in operating the business of the Napoli Cafe.

Besides the foregoing provisions, the agreement between appellants and the assignees contained these additional terms and provisions binding upon the assignees: If assignees were unable for any reason whatsoever to effect retransfer of the liquor license to appellants, assignees would attempt to obtain a similar license and cause the same to be transferred to appellants within 120 days after the expiration or sooner termination of the lease. If assignees failed to obtain and transfer to appellants such similar license within the 120 day period, assignees would pay lessors $25,000.00 as the value of the license and, in addition, reasonable attorneys' fees. If assignees procured and transferred to appellants such similar liquor license, assignees would pay appellants the $300.00 monthly rental for the leased premises during the period between termination of the lease and transfer of the similar liquor license. If assignees were in possession of a liquor license covering the leased premises at the expiration or earlier termination of the lease but failed to transfer the same to appellants, the appellants might elect either to enforce transfer of the license or to recover the $25,000.00 fixed as the value of the license. The assignees might make only such alterations or changes upon the leased premises as were approved in writing by appellants, the arbitrary right to refuse approval being reserved by appellants. If changes or alterations approved by appellants were made by assignees, all additions, improvements, booths, carpets and fixtures, affixed to the realty or not, would become a part of the demised premises and would be surrendered to appellants upon termination of the lease; provided, however, that appellants reserved the right,

in the alternative, to require assignees, at assignees' cost and expense, to restore the premises to the condition in which the same were at the date of the execution of the lease in 1945. The assignees would pay the sum of $900.00 to appellants upon execution of the agreement, as consideration for its execution by appellants; provided, however, that if assignees were not in default under the lease or under the separate written agreement between appellants and assignees during the last three months of the lease term, such $900.00 payment would be applied in satisfaction of the rental coming due for the last three months.

Thereafter, as provided in the agreement between original lessees and the assignees, the liquor license was transferred to the limited partnership [2] and the assignees, in the name of the limited partnership, carried on business upon the demised premises under the business style of "The Blue Note." On August 1, 1954, the assignees defaulted in the payment of rental due under the lease and subsequently they defaulted in payment of the succeeding monthly rental installments. On September 11, 1954, appellants declared a forfeiture of the tenancy of the assignees and made demand upon assignees for the recovery of the demised premises and the liquor license.

On March 3, 1955, an involuntary petition in bankruptcy was filed in the court below against the limited partnership and Alfred P. Hall, individually. In due course, the partnership and Hall were adjudged bankrupts and appellee was appointed and qualified as trustee of their estates. Thereafter, appellee sought by petition [3] an order of the referee in bank-

---

**2.** The license was transferred to and reissued in the names of Alfred P. Hall and Aline P. Woodhouse, as General Partners, and Ida L. Mengola and Anthony Pampalone, as Limited Partners. The reason for the substitution of Ida L. Mengola as a Limited Partner in the place of Joseph Cardona, as provided in the agreement between the original lessees and the assignees, does not appear in the record.

**3.** Prior to his appointment as trustee, appellee acted as receiver of the bankrupts and the petition for sale of the license was actually filed by him while he was receiver and in that capacity. However, upon his appointment as trustee he adopted the petition and prosecuted it as trustee.

ruptcy authorizing a trustee's sale of the liquor license free and clear of any lien, claim, right, or interest therein of the appellants. Before a hearing was held on appellee's petition, appellants filed with the referee their petition in reclamation, claiming that they were the owners of the license and praying that the referee order appellee to surrender and transfer the license to them. Soon thereafter, appellants and appellee, with the referee's approval, stipulated that the license might be sold by appellee without prejudice to the rights of either party and the proceeds impounded by appellee to await judicial determination of the respective claims of the parties to ownership of the license. Upon the trustee's sale, appellants purchased the license for the sum of $13,500.00.

Following hearing of the petitions of the parties, the referee by order denied appellants' petition in reclamation and authorized and directed appellee to administer upon the proceeds from the sale of the license, free and clear of any lien, claim, right, or interest of appellants. The referee based his order upon the ground that Section 7.3 of the California Alcoholic Beverage Control Act,[4] which became effective October 1, 1949, made it legally impossible for appellants to have the ownership of or any interest in the license issued to and standing in the name of the bankrupt partnership. Appellants filed their petition for review of the referee's order by the district judge and, after hearing, the district judge affirmed the referee's order. We affirm the ruling of the district judge.

The prime question in the case is whether or not Section 7.3 of the Alco-

holic Beverage Control Act [5] is applicable to the agreement made by the assignees to retransfer the license to appellants upon termination of the lease. If Section 7.3 is applicable to the agreement to retransfer, the agreement is unlawful and unenforceable and appellants have no claim to or interest in the license. Holt v. Morgan, 1954, 128 Cal.App.2d 113, 274 P.2d 915, 917. But if Section 7.3 is not applicable here, there is nothing intrinsically illegal in the agreement to retransfer nor is it in any way contrary to public policy. Saso v. Furtado, 1951, 104 Cal.App.2d 759, 232 P.2d 583, 589; Etchart v. Pyles, 1951, 106 Cal.App.2d 549, 235 P.2d 427.

Appellants point out that the only language in Section 7.3 which is directly inhibitory is the first sentence, reading: "No licensee shall enter into any agreement wherein he pledges the transfer of his license as security for a loan or as security for the fulfillment of any agreement." They argue, then, that the only thing forbidden by Section 7.3 is the "pledge" of a license either as security for a loan or as security for the fulfillment of an agreement. Consequently, they insist, since there was, in the strict sense, no "pledge" of the license by the parties, Section 7.3 is inapplicable. We cannot agree that Section 7.3 may be read so narrowly as appellants contend. Their strict rendering of its makes idle and meaningless the succeeding sentence of the section, which requires both transferor and transferee to submit to the licensing authority with the transfer application sworn statements specifically stating that the transfer application or proposed transfer is not made to satisfy

---

4. West's Annotated California Codes, Business and Professions Code, Section 24076. At all times pertinent here, Section 7.3 read:
   "No licensee shall enter into any agreement wherein he pledges the transfer of his license as security for a loan or as security for the fulfillment of any agreement. Each application for the transfer of a license must be accompanied by or contain a statement verified by both the transferor and transferee specifically stating that the transfer application or proposed transfer is not made to satis-

fy the payment of a loan or to fulfill an agreement entered into more than ninety (90) days preceding the day on which the transfer application is filed with the board or to gain or establish a preference to or for any creditor of the transferor or to defraud or injure any creditor of the transferor. This statement shall become part of the transfer application, and any misrepresentation contained in the statement shall be considered the misrepresentation of a material fact."

5. See footnote 4.

an agreement entered into more than ninety days preceding the filing of the transfer application with the licensing authority. It is our view that all of the language of the section must be given effect and purpose if that is possible, and that the word "pledge" must be interpreted in the light of this principle.

The matter of the impact of Section 7.3 upon lease agreements wherein the lessors transferred liquor licenses to the lessees with an agreement upon the part of the lessees to retransfer the licenses, has been before the California courts in a number of cases. Saso v. Furtado, supra; Etchart v. Pyles, supra; Pehau v. Stewart, 1952, 112 Cal.App.2d 90, 245 P.2d 692; Tognoli v. Taroli, 1954, 127 Cal.App.2d 426, 273 P.2d 914. In each case, the effective date of the lease was prior to the effective date of Section 7.3 and the court held the retransfer agreement valid because Section 7.3 was not retroactive. Significantly, however, in no case was it held or even suggested that Section 7.3 could not possibly be applicable to the retransfer agreement because no "pledge" of the license was involved.

■■ This court, like other federal appellate courts, accords great weight to determinations made by trial judges upon the laws of the states wherein they sit. In reviewing doubtful questions of law, we will accept the considered views of the trial judge unless we are convinced of error. Santa Margarita Mutual Water Co. v. United States, 9 Cir., 1956, 235 F.2d 647, 654; Wallace v. Knapp-Monarch Co., 8 Cir., 1956, 234 F.2d 853, 857; Citizens Insurance Co. of N. J. v. Foxbilt, Inc., 8 Cir., 1955, 226 F.2d 641, 643, 53 A.L.R.2d 1376. We are not so convinced with regard to the district judge's determination that Section 7.3 is applicable to the retransfer agreement involved here.

■ Appellants also urge upon us that even if Section 7.3 has application to lease agreements providing for the retransfer of licenses to lessors, the lease here was entered into in 1945, long prior to both the passage and effective date of Section 7.3; and they assert that, ac-

cordingly, the California decisions denying retroactive effect to Section 7.3 (Saso v. Furtado, supra; Etchart v. Pyles, supra; Pehau v. Stewart, supra; Tognoli v. Taroli, supra), require reversal of the rulings of the referee and the district judge. But the claimed rights of appellants as against the assignees relating to the license do not have their source either in the original lease or in the purported assignment from the original lessees. The original lease expressly prohibited an assignment thereof. Appellants made a gesture of consenting to the purported assignment to the assignees but exacted for their consent, as new and additional terms of lease, a number of substantial obligations to be complied with by the assignees. We think the legal effect of the agreements made in June, 1953, involving appellants, the original lessees, and the assignees was the creation at that time of a new lease and a new tenancy between appellants and the assignees. Keeley v. Beenblossom, 1918, 183 Iowa 861, 167 N.W. 638; Walker v. Rednalloh Co., 1938, 299 Mass. 591, 13 N.E.2d 394, 397. We hold, therefore, that as between appellants and the assignees the right which appellants claim to a transfer of the license accrued and has its origin in contract between appellants and the assignees made after the effective date of Section 7.3; and we hold, further, that by reason of the provisions of Section 7.3 appellants' claim to the license is unenforceable.

Appellants stress what they conceive to be the inequity of denying their ownership of a license for which they were paid no separate consideration by either the original lessees or the assignees. Perhaps it is a sufficient answer to point out that any loss they suffer results from their own violation of a public policy statute of California. We point out further, however, that the proceeds of the license will not go either to the original lessees or to the assignees, but to unsecured creditors of the assignees who, the referee found, extended credit in reliance upon the assignee's ostensible ownership of the license.

Affirmed.