KEYWELL v. MESSERSCHMIDT.

1. INTOXICATING LIQUORS—AGREEMENT TO TRANSFER LICENSE—FILING WITH COMMISSION.

Agreement to transfer class "B" hotel liquor license from tenant to landlord at expiration of second renewal of 5-year lease of portion of hotel property and as a part of entire transaction for sale of business and lease of premises, which agreement was not filed with the liquor control commission, *held*, not to constitute a present and existing interest in a license such as is referred to in duly-authorized rule of the liquor control commission prohibiting one person from obtaining "a license in his * * * name for the use and benefit of another person whose name does not appear on the license," where during previous 15-year period the tenant had been the exclusive owner of the license (CL 1948, § 436.7; Administrative Code 1944, p 435; Supplement No 12, p 25).

2. SAME—TRANSFER OF LICENSE—CONTRACTS—FILING.

Neither the liquor control act nor the rules and regulations of the liquor control commission require that an agreement to transfer a liquor license be filed in the office of the commission.

REFERENCES FOR POINTS IN HEADNOTES

[1, 5]  30 Am Jur, Intoxicating Liquors §§ 109, 588.
[1, 5]  As to right of one who acquires title to, or other interest in, real property to benefit of a license previously issued by the public, permitting use of property for a specified purpose, see 131 ALR 1339.
[2–6]  30 Am Jur, Intoxicating Liquors § 140.
[6]  As to disposition of secured claims against receivers, see 45 Am Jur, Receivers §§ 252, 253.

3. Same—Transfer of License—Contracts—Public Policy.

> An agreement to transfer a liquor license upon termination of a lease is not void as contrary to public policy as the liquor law authorizes the transfer of such a license, since there can be no violation of public policy in an agreement to do that which is legal, in the absence of fraud or other unconscionable conduct (CL 1948, § 436.17, as amended by PA 1949, No 174).

4. Same—Transfer of Licenses—Consents Required.

> The transfer of certain licenses issued under the liquor control act, as amended, is not contrary to public policy although the transfer is subject to the consent of the liquor control commission and approval of the local legislative body (CL 1948, § 436.17, as amended by PA 1949, No 174).

5. Specific Performance—Transfer of Liquor License.

> An agreement by tenant under second renewal of 5-year lease of part of hotel premises to retransfer liquor license to landlord at expiration of term is subject to the remedy of specific performance by requiring licensee to apply for transfer of the license, and upon approval by the liquor control commission, to execute a good and sufficient transfer.

6. Receivers—Specific Performance—Transfer of Liquor License.

> Funds in possession of receivers of liquor licensee are ordered transferred to transferee of license upon decree for plaintiffs in suit for specific performance of agreement to transfer liquor license, after deduction of reasonable sum for operation of business by defendant during receivership and the necessary and proper expenses of the receivership.

Appeal from Wayne; FitzGerald (Frank), J. Submitted January 14, 1953. (Docket No. 44, Calendar No. 45,666.) Decided April 13, 1953.

Bill by Henry C. Keywell and wife against Eleanor Messerschmidt, executrix of the estate of Herman Messerschmidt, deceased, for specific performance of agreement to transfer liquor license. Decree for plaintiffs. Defendant appeals. Affirmed.

*Robbins & Wechsler* (*Isaac Finkelstein,* of counsel), for plaintiffs.

*Edward F. Collins* and *Robert J. Peretto,* for defendant.

ADAMS, J. This is an action for specific performance of an agreement to transfer a license issued by the Michigan liquor control commission.

In 1937, Henry C. Keywell and Rose Keywell, his wife, plaintiffs and appellees, were the owners of a hotel in the city of Detroit. Henry C. Keywell and Herman Messerschmidt, deceased, whose estate is now in probate in Wayne county, with Eleanor Messerschmidt, defendant and appellant, acting as executrix thereof, operated a business in the hotel under a class "B" hotel liquor license.

On June 14, 1937, Keywell sold the business, including all fixtures and equipment, to Messerschmidt and transferred his interest in the liquor license with the approval of the Michigan liquor control commission. At the same time that the transfer was made and as a part of the entire transaction, the parties executed a 5-year lease of a portion of the hotel property and a chattel mortgage to Keywell securing certain indebtedness. In the lease Messerschmidt agreed to keep the licensed business in the hotel and to transfer the license back to Keywell at the end of the term.

Five years later, in 1942, a second lease was executed, together with a new chattel mortgage and a separate agreement in reference to the transfer of the license.

Again on June 2, 1947, at the expiration of the second term, a third lease of 5 years was signed by the parties, a new chattel mortgage given, and a new agreement executed in reference to transfer of the license. This last agreement constitutes the basis

for the present action, the pertinent portion reading
as follows:

"That it is understood that the present license
issued by the Michigan liquor control commission or
any and all renewals thereof, or any and all other
licenses that may be issued by the liquor control
commission, or any other governmental body, shall
be and remain a part of the premises at all times;
and that said license and/or licenses cannot be re-
moved from said premises by the party of the second
part, nor sold or assigned or encumbered by him in
any manner whatsoever voluntarily or involuntar-
ily; that in the event there is a breach of the terms
and the conditions of the lease, or there is issued an
order of the liquor control commission or any other
lawful body or court, requiring said license and/or
licenses to be transferred, that said license and/or
licenses shall be transferred forthwith to the parties
of the first part. And that upon the expiration of the
term of the lease and the full and faithful perform-
ance thereof, the party of the second part [Messer-
schmidt] shall assign and transfer said license to
the parties of the first part. * * *

"That the party of the second part does by these
presents, authorize and appoint the parties of the
first part [Keywells] to execute said assignment and
transfer as his attorney, in fact; said power of at-
torney to be irrevocable and continuing."

Herman Messerschmidt died on February 6, 1952,
and Eleanor Messerschmidt was appointed executrix
of his estate by the probate court of Wayne county.
At the expiration of the term of the lease, Keywells
made demand upon the executrix for a transfer of
the liquor license to them and, upon refusal, this
action was instituted for specific performance. The
circuit court found for the plaintiff and appointed a
receiver to manage the business pending appeal to
this Court.

It is the position of the defendant that the existence of the agreement to transfer the license was unknown to the commission and therefore in violation of the Michigan statutes and the rules and regulations of the Michigan liquor control commission and that as a result, the agreement itself is unenforceable. She claims that because a copy of the agreement was not filed with the Michigan liquor control commission, it resulted in the concealment of an interest in the license in violation of rule 31 adopted by the liquor control commission pursuant to their rule-making authority provided by PA 1933 (Ex Sess), No 8, § 7, as amended by PA 1945, No 133 (CL 1948, § 436.7 [Stat Ann 1951 Cum Supp § 18.977]). That rule* reads as follows:

"No licensee shall sell or transfer his license, or any interest therein, without the consent of the liquor control commission; nor shall any person or persons obtain a license in his or their name for the use and benefit of another person whose name does not appear on the license.

"No licensee shall transfer location of his license, make any alterations in the physical structure of his licensed premises, or change the character of the business for which the license was granted without the consent of the commission being first duly obtained."

The parties conceded on the record that the agreement to transfer was not filed with the liquor control commission, and we must presume that the commission did not know of its existence. No reason is suggested for the failure to file nor is there indication of any intent or effort to conceal.

We are of the opinion, however, that the agreement does not constitute a present and existing interest in a license such as is referred to in the rule as

---

* Administrative Code 1944, p 435; Supplement No 12, p 25.—REPORTER.

"a license   *   *   *   for the use and benefit of another person." During the 15-year period that Messerschmidt held the license from the commission, he was, insofar as the record shows, the exclusive owner thereof. He neither shared the profits with anyone nor was his use and exercise of the license dictated by another. Had he violated the statute or the rules and regulations of the commission during that period, he could have been penalized by the commission even to the extent of the cancellation of the license and neither the Keywells nor any other person could have objected to such action.

The agreement of the parties provided for 2 things; namely, that the license would not be removed from the hotel and that it would be transferred to the Keywells on the happening of a specified contingency. We find nothing in the Michigan liquor control act that prohibits such an agreement nor do we find any provision in the act or in the rules and regulations of the commission requiring that such an agreement be filed in the commission office.

It is the further contention of the appellant that the agreement to transfer the license upon the termination of the lease is void as being contrary to public policy. Again we cannot agree. The statute authorizes a transfer of such a license* and in the absence of fraud or other unconscionable conduct there can be no violation of public policy in an agreement to do that which is legal.

In an opinion of this Court in 1944 where substantially similar circumstances existed, it was said:

"Defendant claims that an agreement to transfer the license is contrary to public policy and void. This claim is untenable now in Michigan since the enactment of PA 1933 (Ex Sess), No 8, § 17, as

---

* See CL 1948, § 436.17, as amended by PA 1949, No 174 (Stat Ann 1949 Cum Supp § 18.988).—Reporter.

amended by PA 1937, No 281 (CLS 1940, § 9209–32, Stat Ann 1943 Cum Supp § 18.988), which enacted that licenses may be transferred with the consent of the commission and certain licenses shall be approved by the local legislative body. The word "transferred" as used here implies and carries with it the making of an agreement of transfer. It is therefore not illegal in Michigan to agree to make a transfer. It is simply subject to the consent of the commission and of the local legislative body." *Robd-voets* v. *Anscer,* 308 Mich 360.

A decree will enter directing the defendant to forthwith execute and file with the Michigan liquor control commission an application for transfer of license and, upon approval thereof by the commission, a good and sufficient transfer of such license to the plaintiffs. In addition, the decree shall require a final accounting by the receivers heretofore appointed by the circuit court. Funds in the possession of the receivers shall be paid over to the plaintiffs after deduction of a reasonable sum for services of Eleanor Messerschmidt in the operation of the business, not exceeding the sum of $500 per month for the period subsequent to June 2, 1952, together with the necessary and proper expenses of the receivership. Costs of the litigation to appellees.

DETHMERS, C. J., and BUTZEL, CARR, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.