[Civ. No. 8061. Third Dist. June 27, 1952.]

JOHN PEHAU, Respondent, v. LAURETTA STEWART et al., Appellants.

Joseph F. Aleck, Jr., and Richard B. Eaton for Appellants.

Carlton & Shadwell for Respondent.

SCHOTTKY, J. pro tem.—Plaintiff Pehau, the owner and lessor of a tavern known as Oak Grove Tavern, located near Redding, California, brought this action on November 22,

1949, to specifically enforce the terms of the lease which provided for a retransfer of an on-sale liquor license to the lessor upon termination of the lease. It was alleged that the lessees failed to pay rental of $200 per month due on November 1, 1949; that plaintiff lessor served a three-day notice to pay rent or vacate; that the rental was not paid, and that thereafter the lessees relinquished and abandoned the premises. It was also alleged that defendant Stewart refused to execute a retransfer of the liquor license. Appellant Chadaris was granted permission to intervene in the action and appellants filed an answer and cross-complaint.

The answer denied that defendant relinquished, vacated or abandoned the premises; denied there was a wilful failure to pay the rental within the three-day notice, and alleged that a tender and offer to pay were made within the three-day period. By cross-complaint, defendants sought damages for an alleged wrongful eviction by plaintiff, and also prayed for general relief.

The trial court found that defendants failed to pay the November rental of $200 within the three-day period; that they were in default under the lease; that plaintiff had not wrongfully evicted defendants; that plaintiff was entitled to have the liquor license transferred to him; that Carlton and Shadwell had rendered legal services for plaintiff in said action of the value of $500; that defendants were not damaged by any acts of plaintiff. The court did not make findings on the issue of surrender or abandonment.

Judgment was entered for plaintiff in accordance with said findings. Defendant's motion for a new trial on all statutory grounds was filed on September 29, 1950. On November 24, 1950, the court filed the following order:

"It is hereby ordered that the judgment be and the same is hereby vacated and set aside and a New Trial is ordered granted on the single question and issue of the relief to be granted; that is, as to whether it should be granted pursuant to the provisions of Section 3275 of the Civil Code. Dated this 22nd day of November, 1950."

On December 28, 1950, the court filed the following order:

"It appearing that the Court acted in excess of its jurisdiction in Granting a Motion for New trial as to certain questions involved in the above entitled cause, the Order Granting said Motion for a New Trial, heretofore made, is ordered vacated and set aside. Dated December 20, 1950."

Defendants and cross-complainants have appealed from the judgment and have also appealed from the part of the order granting a new trial which limits the trial to the single issue. The two appeals have been consolidated. Before discussing the contentions of counsel we shall summarize briefly the factual situation as disclosed by the record.

The record shows that on February 5, 1947, respondent John Pehau leased Oak Grove Tavern to C. H. Unger, E. H. Wolfe and J. E. Womack for a term of seven years at a rental of $125 per month. The lease provided that the lessees were to operate a bar, night club and restaurant on the premises and recited that Opal Pruitt, the former lessee, was transferring a general liquor license to the new lessees and provided also that the lessees agreed to transfer the license to lessor at the expiration of the lease.

On March 2, 1948, Kenneth Howard entered into an agreement with Unger, Wolfe and Womack to purchase said business, including the license, stock-in-trade, leasehold interest and good will for the sum of $21,000 plus inventory, $10,000 to be paid within 60 days, and the balance to be paid at the rate of $500 per month, and respondent Pehau consented to the assignment of said lease.

On July 26, 1948, appellant Lauretta Stewart entered into a partnership agreement with Kenneth Howard under which she became a colessee under said lease, and respondent Pehau consented to said agreement in consideration of the rent being raised to $200 per month.

On April 28, 1949, Kenneth Howard assigned all of his interest in said lease to appellant, Lauretta Stewart, and also all of his interest in the agreement of sale with Unger, Wolfe and Womack, said assignments being with the consent of respondent Pehau and of Unger, Wolfe and Womack.

Thereafter, on April 28, 1949, appellant Lauretta Stewart, with the consent of respondent Pehau, assigned an interest in said lease and agreement to George Whiteman, and on July 14, 1949, the guardian of the Estate of George Whiteman assigned to appellant Louis Chadaris all of the interest of George Whiteman in said lease and agreement for the sum of $4,500.

Appellants failed to pay the rent on November 1, 1949, and on November 2d were served with a notice to pay the rent within three days or surrender possession. It appears that in several months from November, 1948, on, the monthly rental had been paid and accepted after the due date, and in July,

1949, a three-day notice was served on appellants and the rental for said month was paid to Mr. Shadwell, attorney for respondent, and accepted by him on July 14, 1949. Appellant Stewart testified that after service upon her of a three-day notice for failure to pay rent on July 1, 1949, Shadwell had instructed her that if another such notice was served such rent was to be paid to Shadwell and not to Pehau, but Shadwell denied giving any such instruction.

Following the service on November 2, 1949, of the three-day notice appellant Stewart went to the office of Mr. Shadwell, on Saturday, November 5th, to pay the rent but the office was closed. On Monday morning, the 7th, she paid the money to a secretary in Shadwell's office and was given a receipt. In the meantime respondent went into the Oak Grove Tavern and told appellant Chadaris that he was taking possession. Appellant Stewart came in and showed respondent the receipt and respondent said it was too late. Respondent then phoned Shadwell and Shadwell talked to appellant Stewart on the telephone and told her that the payment had been made too late and for her to pick up the money at his office and that she had 24 hours to remove herself from the dwelling quarters adjacent to the night club. Respondent took the keys and appellants left the premises.

Appellant Chadaris testified that he did not tell respondent or anybody that he intended to abandon or give up the premises. Respondent testified that appellant Chadaris informed him prior to November 1, 1949, that he (Chadaris) was not going to pay any future rent; that on Monday, the 7th, "I told Mrs. Stewart to go and she told me she was going to get out"; that he received the keys to the tavern from her without complaint; and that appellants left the premises.

We shall first consider the question of the validity of the order granting a new trial and the effect of the purported order vacating it.

As hereinbefore stated the motion for a new trial was filed on September 29, 1950, and the order granting it was made on November 24, 1950. Under section 660 of the Code of Civil Procedure the power of the trial court to pass upon the motion for a new trial expires 60 days after notice of entry of judgment or notice of intention to move for a new trial. In *Sparr v. Byers,* 139 Cal.App. 668, the court said at page 670 [34 P.2d 787]:

"We also think the order entered on April 19, 1932, purporting to set aside the order granting a new trial, was void

under section 660 of the Code of Civil Procedure, as the same then stood. The power of the court to pass upon a motion for a new trial expired sixty days after February 9, 1932. Notwithstanding this fact, on April 19, 1932, the court attempted to set aside the order granting a new trial and to reinstate the original findings and judgment. This was an attempt to pass upon the motion for a new trial after the sixty days had expired by another and new order, the effect of which would be to deny a new trial. This was beyond the court's power, as it had then lost jurisdiction to pass upon the motion for a new trial.''

It is clear, therefore, that when the court made the order of December 28, 1950, vacating the previous order granting a new trial, it made an order that was beyond its power unless in making its order granting a new trial it had acted in excess of its jurisdiction, or the order was inadvertently entered or there was a clerical error in its entry.

Appellants contend that they were entitled to a new trial upon all of the issues. They argue that there was no evidence of abandonment or surrender; but inasmuch as there was no finding of abandonment or surrender it is unnecessary to discuss this contention.

The appellants next contend there was no legal forfeiture of the lease and liquor license. ██ Appellants point out that there were previously accepted late rent payments after the due date of the 1st of each month. In this connection it is argued that respondent is estopped to object to the late payment, and that respondent is also estopped to object to a tender of payment to Shadwell. The lease contained a time is of the essence provision, and a provision for reentry upon default. The court did not specifically find on the issue of forfeiture but did find that "it is true that defendants are in default under" the lease. In view of the fact that appellants were late in their payment of rent on several occasions, that they had been served with a three-day notice in July and again in November, that they had ample opportunity to pay the November rent direct to respondent within the three-day period and did not do so, we cannot hold that as a matter of law there was no evidence to support the finding that they were in default under the lease. Nor can we hold that the evidence compels a finding that respondent was estopped to object to a late payment of the rent. While it may seem that the degree of default of appellants in the payment of the rent was not great, yet that was a question for the trial court.

Appellants contend also that the court erred in requiring appellants to transfer the liquor license to respondent in accordance with the terms of the lease. They argue that the lease provision requiring retransfer or forfeiture of the liquor license was invalid under the statute and against public policy. Appellants cite section 7.3 of the Alcoholic Beverage Control Act (2 Deering's Gen. Laws, 1949 Pocket Supp., Act 3796) which provides:

"No licensee shall enter into any agreement wherein he pledges the transfer of his license as security for a loan or as security for the fulfillment of any agreement. Each application for the transfer of a license must be accompanied by or contain a statement verified by both the transferor and transferee specifically stating that the transfer application or proposed transfer is not made to satisfy the payment of a loan or to fulfill an agreement entered into more than ninety (90) days preceding the day on which the transfer application is filed with the board or to gain or establish a preference to or for any creditor of transferor or to defraud or injure any creditor of transferor. Said statement shall become part of the transfer application and any misrepresentation contained in said statement shall be considered the misrepresentation of a material fact."

Respondent in reply points out that said section 7.3 became effective October 1, 1949, and argues that the section is not retroactive, citing *Etchart* v. *Pyles,* 106 Cal.App.2d 549 [235 P.2d 427], where the court said at page 553:

"Defendant directs our attention to section 7.3 of the Alcoholic Beverage Control Act (added by Stats. 1949, ch. 1348) which provides that no licensee shall enter into any agreement where he pledges a transfer of his license as security for a loan, or as security for the fulfillment of any agreement. This section did not become effective until October 1, 1949. It is not retroactive (*Campbell* v. *Bauer,* 104 Cal.App.2d 740, 743 [232 P.2d 590]) and is not applicable here."

Respondent also quotes from *Saso* v. *Furtado,* 104 Cal.App. 2d 759, at page 769 [232 P.2d 583], as follows:

"As the agreement to retransfer as between the parties is not prohibited by the act, and as such agreements must be viewed in the light of the act which makes the transfer of all licenses subject to the discretion of the board, there is nothing illegal in such an agreement, nor is it in any way contrary to public policy."

The lease in question was executed February 5, 1947. The appellants became lessees thereunder by assignment. Appellant Stewart became the assignee of the liquor license on April 28, 1949, and appellant Chadaris became a partner with Stewart on July 14, 1949.

We therefore conclude that the trial court did not err as a matter of law in including· in the judgment a provision requiring appellants to transfer the liquor license to respondent in accordance with the terms of the lease.

Appellants contend the court should have awarded them $300 damages for conversion ·of the personal property, a witness for respondent placing the value of said property at that amount. There is no merit in this contention. Respondent testified that the personal property was still in the tavern at the date of the trial. It does not appear that appellants have been refused possession of the personal property.

Appellants next contend that the trial court erred in awarding respondent the sum of $500 as attorneys' fees. Appellants state that respondent had the burden of proof to establish the requirement of and the .reasonable amount of attorneys' fees, and that no evidence was adduced as to the value of the legal services. The lease provided for reasonable attorneys' fees in the event that the lessor should be required to commence legal action· to enforce any of its terms. It is well settled that a court may determine what is a reasonable amount to be allowed as attorneys' fees without hearing any testimony as to the value thereof. The general rule is stated in 18 California Jurisprudence, page 517, as follows:

". . . As it is unnecessary to allege that the sum claimed as attorney's fees in a foreclosure action is a reasonable sum, so also a finding of that fact is unnecessary. The conclusion of law that the mortgagee is entitled to attorney's fees rests upon the provisions of the mortgage, and the court may determine what amount would be a reasonable attorney's fee without hearing any testimony thereon. The fact that the case was commenced in and tried before the court rendering the judgment affords sufficient evidence of the services of plaintiff's attorney, and the court has discretion to fix the fee without calling for the opinion of witnesses to assist it. [Citing cases.]"

Appellants in their closing brief assert that $500, the amount awarded, was. excessive, but there is nothing to

indicate that the trial court abused its discretion in fixing the amount of attorneys' fees.

Having concluded that the trial court did not err in refusing to grant appellants a new trial upon all issues, we come now to the final question as to whether the court had jurisdiction to make the order of November 24, 1950, in which it ordered a new trial granted "on the single question and issue of the relief to be granted; that is, as to whether it should be granted pursuant to the provisions of Section 3275 of the Civil Code." We have already determined that the subsequent order of the court on December 28, 1950, purporting to vacate its order of November 24th, was in excess of its jurisdiction and wholly ineffective.

Respondent has not appealed from the order granting the limited new trial, but respondent contends that any new trial on this particular issue "would be a nullity as far as they [appellants] are concerned because the court has lost jurisdiction to proceed in the field of relief from forfeiture due to the passage of time." Respondent then argues:

"All we need do is call the Court's attention to Section 1179 of the Code of Civil Procedure. The procedure set forth in that section is for the disgruntled tenant to follow and in this case the defendants, who were the tenants, failed to follow or take advantage of the provisions of said section within the time set forth therein. It is our position that the tenant defendants should have filed a petition within thirty (30) days after the notice of entry of judgment or be barred from asking relief from forfeiture of the leasehold interest.

. . . . . . . . . . . .

"Conceding for the sake of argument that Judge Paulsen was in error in making an order setting aside the order granting a new trial, the Appellate Court would have before it the question of the propriety of Judge Paulsen's order granting a new trial on the special issue of whether or not the defendants should not be entitled to make a showing for the purpose of relieving themselves from a forfeiture. We are then confronted with Section 1179 of the Code of Civil Procedure which sets out the special procedure that must be followed before relief can be given in a case of this kind. The Appellate Court can come to but one conclusion and that is that Judge Paulsen's first order granting a new trial on the special ground was erroneous and void."

So far as respondent's contention that the court's first order granting a new trial on the special ground is erroneous

is concerned, respondent is hardly in a position to make that contention as he has not appealed from said order. If the trial court had jurisdiction to make the order and it made an erroneous order, the only way in which the order could be set aside would be by an appeal from it.

We are convinced that the court had jurisdiction to make the order granting a limited new trial and that said order was not void. The instant action was one to compel specific performance of provision in a lease upon the ground that appellants' rights under the lease had been forfeited. Appellants answered denying any breach and also filed a cross-complaint seeking damages for alleged wrongful eviction and for general relief. Both legal and equitable issues were involved in the action. It was not an action in unlawful detainer and, therefore, section 1179 of the Code of Civil Procedure, cited by respondent, was not applicable, for as stated in *Hignell* v. *Gebala,* 90 Cal.App.2d 61, at page 70 [202 P.2d 378]: "It was not a proceeding under section 1179. This section is special in its nature, applying only to unlawful detainer proceedings, while section 3275 is general."

Section 3275 of the Civil Code provides:

"Whenever, by the terms of an obligation, a party thereto incurs a forfeiture, or a loss in the nature of a forfeiture, by reason of his failure to comply with its provisions, he may be relieved therefrom, upon making full compensation to the other party, except in case of a grossly negligent, willful, or fraudulent breach of duty."

Appellants contend that if a forfeiture resulted they are entitled to be relieved therefrom under section 3275 of the Civil Code. Appellants' cross-complaint does not ask relief under section 3275, but the prayer reads: "For such other and further relief as to the court may seem proper." The answer alleged that appellants were ready, willing and able to pay the rental on November 5, 1949, the last day under the notice to pay or quit, and deny there was a wilful failure to pay the rental. The answer also sets up the attempt to make payment at Shadwell's office on the 5th, and the payment of the money to the secretary on the 7th, and the refusal to accept payment and the return of the money. The court did not find upon the issue of wilful breach. The lease provided for a term from February, 1947, to February, 1954.

Appellants cite *Barkis* v. *Scott,* 34 Cal.2d 116 [208 P.2d 367], where the court said at page 120: "Section 3275 presupposes that the party seeking relief is in default, and in

order to secure relief under its terms it is necessary for him to plead and prove facts that will justify its application. [Citing cases.]'' And also at page 122: ''On the other hand, when the default has not been serious and the vendee is willing and able to continue with his performance of the contract, the vendor suffers no damage by allowing the vendee to do so. In this situation, if there has been substantial part performance or if the vendee has made substantial improvements in reliance on his contract, permitting the vendor to terminate the vendee's rights under the contract and keep the installments that have been paid can result only in the harshest sort of forfeitures. Accordingly, relief will be granted whether or not time has been made of the essence. [Citing cases.]'' See, also, *Gonzalez* v. *Hirose,* 33 Cal.2d 213 [200 P.2d 793]; *Baffa* v. *Johnson,* 35 Cal.2d 36 [216 P.2d 13]; *Freedman* v. *Rector, W. & V. of St. Matthias Parish,* 37 Cal.2d 16 [230 P.2d 629].

We do not know what the trial court had in mind when it granted the motion for a new trial upon the issue as to whether relief should be granted pursuant to the provisions of section 3275, but in view of the fact that appellants had paid a considerable sum of money for the business, lease and liquor license, and the breach relied on by respondent was not an aggravated one, the court may well have felt that, in an action in which respondent was seeking the equitable relief of specific performance, all of the equities, including the right of relief from forfeiture, should be examined into further. These are matters which can only be determined upon the new trial, which we are satisfied the trial court had full power to grant and did grant.

The judgment having been vacated by the order granting a new trial, the appeal therefrom is dismissed. The order granting a new trial is affirmed.

Peek, J., and Van Dyke, J., concurred.