[Civ. No. 17878. First Dist., Div. Two. Apr. 28, 1958.]

FRANK G. CAVALLI et al., Respondents, v. LEE MACAIRE et al., Appellants.

Robert J. Dell'Ergo for Appellants.

Dennis L. Woodman for Respondents.

BRAZIL, J. pro tem.*—The appellants and the respondents, who had been friends for 30 years, have come to court by an action for declaratory relief to decide which is entitled to certain on-sale and off-sale liquor licenses. These licenses were originally issued to the Cavallis for use at a little place at La Honda, called "Cavalli's Inn." In the latter part of 1945, on proper application for transfer to the Alcoholic Beverage Control Board, these licenses were then issued to the Macaires for use at the same place as before. They have been renewed annually since then; and they still remain in the name of the appellants.

*Assigned by Chairman of Judicial Council.

In compliance with a written agreement of November 23, 1945, so to do, the respondents sold to the appellants all the furniture, furnishings and liquor inventory of Cavalli's Inn for $3,000; and then on December 1, 1945, executed a five-year lease of the premises in favor of the appellant purchasers. That lease among other things contained this provision:

"If the lessees hold possession of the premises after the expiration of the term of this lease, such lessees shall become tenants from month to month at the rental and upon the terms herein specified, and shall continue to be such tenants until the tenancy shall be terminated by the lessors, or, until the lessees shall have given to the lessors a written notice of at least one month of intention to terminate the tenancy; . . .". Notices provided by the foregoing section were not given by either party to the lease; and possession has all this time remained undisturbed with the appellants.

A second provision of the lease which is the same as paragraph 13 of the November agreement of sale is as follows:

"It is understood that lessees will have transferred to them by Frank G. Cavalli, a certain on-sale beer and wine license, an on-sale distilled spirits license and a Retail Package Off-Sale General license, to be used in connection with the operation of the business on said premises; it is agreed by the lessees that, as a further consideration for this lease, that they will not, nor will either of them at any time commit any act which will cause the suspension or revocation of said licenses or any of them, and that they nor either of them will at any time transfer or assign or attempt to transfer or assign said licenses, or any of them, or any renewals thereof, to any person, firm or corporation for use in connection with any business conducted or to be conducted and operated on any premises other than the premises herein described and hereby leased; and lessees further agree that they nor either of them will at any time remove said licenses or any of them for use in connection with any business at any location other than on the premises hereby leased; and lessees further agree that, upon the expiration or sooner termination of this lease, they will transfer and assign said licenses to the lessors, their successors, nominees or representatives, upon the payment to said lessees of the pro rata cost of said licenses as of the date of the transfer . . ."

There was no option provision for renewal or extension of the term in the 1945 lease. Five years later, the same parties signed another instrument called a two year lease which included an option to *further extend* the term for three more

years. This second lease is practically the same as the first with a few minor changes such as increase in rent by $25 a month plus additional taxes, some variance in obligations respecting outside walls and foundations and the addition of the option already mentioned. Paragraph 13 of the first lease was copied into the second one without any change except that the past tense instead of future perfect is used in referring to transfer of license. The business continued to be operated as usual, the rent was paid regularly and there were no disputes until early in 1955, when a controversy arose between the parties over the ownership of the licenses. The respondent filed an action in declaratory relief with a supplementary cause of action for injunctive relief, to determine the rights of the parties in and to the liquor licenses.

The trial court entered judgment in favor of the plaintiffs, decreeing that the defendants were bound by the terms and conditions of paragraph 13 of the November, 1950 lease, and enjoined them from transferring the licenses to anyone other than plaintiffs. The court retained jurisdiction to make further orders to carry out the provisions of the judgment. The appeal is taken from the entire judgment.

Appellants' first contention that respondents' cause of action is barred by Code of Civil Procedure, section 337, is without merit for there was no dispute or controversy existing between these parties until well within the four year period.

"The statute of limitations in a declaratory action does not begin to run against a right to maintain the same, until an actual controversy has accrued or occurred . . ." (*Salada Beach etc. Dist.* v. *Anderson*, 50 Cal.App.2d 306, p. 308 [123 P.2d 86].)

Appellants' main contention is that paragraph 13, relating to retransfer of liquor licenses is illegal and void as contrary to public policy. The claim of illegality is based on the assumption that the agreement to retransfer is given as security for the fulfillment of an agreement in violation of the provisions of section 24076 of the Business and Professions Code which reads as follows:

"No licensee shall enter into any agreement wherein he pledges the transfer of his license as security for a loan or as security for the fulfillment of any agreement. Each application for the transfer of a license shall be accompanied by or contain a statement verified by both the transferor and transferee specifically stating that the transfer application

or proposed transfer is not made to satisfy the payment of a loan or to fulfill an agreement entered into more than ninety (90) days preceding the day on which the transfer application is filed with the department or to gain or establish a preference to or for any creditor of the transferor. . . . This statement shall become part of the transfer application, and any misrepresentation contained in the statement shall be considered the misrepresentation of a material fact.''

■ The foregoing section became effective October 1, 1949. This section is not only not retroactive as to rights that have accrued and have been adjudicated before the effective date of the section, but is also not retroactive as to rights that have accrued but have not yet been adjudicated. (*Tognoli* v. *Taroli,* 127 Cal.App.2d 426 [273 P.2d 914].)

Appellants also call attention to three other sections of the same code, claiming that what was done here was in violation of those sections. They are:

*23300.* ''No person shall exercise the privilege or perform any act which a licensee may exercise or perform under the authority of a license unless the person is authorized to do so by a license issued pursuant to this division.''

*23355.* ''. . . the licenses provided for in Article 2 of this Chapter authorize the person to whom issued to exercise the rights and privileges specified in this article and no others at the premises for which issued during the year for which issued.''

*24040.* ''Each license shall be issued to a specific person . . .''

These three sections have no application to the facts of this case for the respondent did not in any way exercise any privilege, perform any act or receive any profit from the licenses as issued. ''Defendant's contentions that plaintiff is estopped to assert any claim to the license in question [an agreement to retransfer case] and has not come into a court of equity with clean hands are apparently based on the theory that plaintiff wilfully concealed her interest in the license and affirmatively claimed she retained no interest in it when the transfer was made to defendant. There is no evidence in the record of such claimed wilful concealment, and while plaintiff made application 'to surrender all her interest in the license,' she had no interest in the operation of the business under lease and received no profits from the license. Under these circumstances the contentions of defendant cannot be sustained.'' (*Etchart* v. *Pyles,* 106 Cal.App.2d 549, pp. 553, 554 [235 P.2d 427].)

Unless the said section 24076 makes this agreement for retransfer illegal, there is nothing else in the Alcoholic Beverage Control Act which would make the arrangement illegal or void as against public policy. "As the agreement to retransfer as between the parties is not prohibited by the act, [§ 24076 is not involved] and as such agreements must be viewed in the light of the act which makes the transfer of all licenses subject to the discretion of the board, there is nothing illegal in such an agreement, nor is it in any way contrary to public policy." (*Saso* v. *Furtado,* 104 Cal.App.2d 759, p. 769 [232 P.2d 583].)

There is nothing in the record to support appellants' contention that all legal and beneficial interest in the licenses passed to them by the original transfer with only a restriction on the place where they could be used. It is clear that no consideration was paid for the licenses and that the parties did not intend to make a complete and final transfer of all interest therein, thereby making the appellants owners of a valuable property right they had not paid for. There is no provision in any of the agreements giving appellants the absolute right to sell the licenses so long as they remained at Cavalli's Inn. The evidence shows only that Mr. Cavalli had no objection to the sale of the business and in such an event he would consent to a transfer of the licenses after working out a lease agreement with the prospective purchasers.

We assume, without deciding, that the arrangement entered into by these parties for retransfer would be illegal if made after the effective date of section 24076 of the Business and Professions Code. It then becomes important to determine whether the 1950 lease was a renewal or an extension of the 1945 lease. Respondent claims and the court found it to be an extension; and the appellant maintains it can only be a renewal.

"A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties." (Civ. Code, § 1643.)

The record supports the following observations contained in the memorandum opinion of the trial judge: "It was specifically agreed that no consideration was to be paid for the transfer of said licenses . . . Thereafter, on November 28, 1950, a new lease was made, substantially in the form of the prior lease extending the tenancy to November 30, 1952. This second lease also contained a paragraph 13 with the same

provisions as paragraph 13 in the original lease . . . It is beyond dispute that the licenses involved now are the same licenses as were originally transferred. In our opinion, it is also beyond dispute that, at the time of the execution of each of the three documents above referred to, it was the intention of all parties that defendants would merely have the right to use said licenses until the premises were restored. . . . Defendants have shown no equities, and, in our opinion, it would be unjust enrichment to hold that they were entitled to retain the licenses."

The appellants claim that the 1950 agreement cannot be an extension of the 1945 lease for the rent was increased, a provision was made for an option to extend the term, and there were some differences in relation to liability in regard to foundations and exterior walls. The 1950 lease was substantially a recopying of the 1945 lease; the conduct of the parties and the use of the expression "further extend" in the option clause, justified the trial court in determining that the new lease was in fact only an extension or continuation of the old lease. Otherwise, the major portion of the consideration, embodied in paragraph 13 dealing with a retransfer of the licenses, would be an unlawful consideration and the entire contract would in all probability be void. If such were the case the appellants would then be holding under the original lease as a tenant from month to month as is provided in section 10 of that instrument, hereinbefore set out at length, and would, under the original paragraph 13, be required to make the retransfer.

The use of the words "further extend" the term in the option clause of the 1950 lease indicate that the option created a right to a second extension, the November 1950 lease being itself the first extension.

Under the circumstances presented in this case, the trial court was not incorrect in finding, despite the fact that a written instrument called a lease was actually signed by the parties, that there was in fact an extension and not a renewal of the original 1945 lease. As the rights and obligations of the parties are determined by this earlier lease, the provisions of Business and Professions Code, section 24076, having no retroactive effect, are not applicable.

Judgment affirmed.

Kaufman, P. J., and Draper, J., concurred.