[Civ. No. 20439. First Dist., Div. Two. Jan. 3, 1963.]

CHARLES H. HAMMOND et al., Plaintiffs and Appellants, v. AMBROGIO PASQUINI et al., Defendants and Respondents.

Mathews & Traverse and Francis B. Mathews for Plaintiffs and Appellants.

Mitchell & Henderson and James W. Henderson for Defendants and Respondents.

AGEE, J.—Plaintiffs appeal from a summary judgment rendered in favor of respondents in a suit for declaratory relief. Plaintiffs had sought a declaration by the trial court that the respondents were obligated to retransfer a liquor license to the plaintiffs for a sum agreed upon in a written lease, a copy of which was attached to the complaint.

The sole defense, and the basis of the summary judgment, was that the clause in the lease which provided for the retransfer of the liquor license violated Business and Professions Code section 24076, and therefore was unenforceable.

The facts of the case are uncontroverted. On December 1, 1951, respondents' assignors leased real property, the site of the Tripoli Market, from the assignors of the appellants. (Respondents therefore stand in the shoes of the former lessees, and the appellants in the shoes of the former lessors.) Included in the transaction was the sale of a liquor license. The only pertinent part of the lease for our purposes is as follows: "IT IS FURTHER AGREED by and between the parties hereto, that in consideration of the Lessors making this lease, that at the end of the term of this lease, or prior termination thereof, the Lessors shall have the option to purchase the liquor license sold by the Lessors to the Lessees for the sum of Seven Thousand Three Hundred ($7,300.00) DOLLARS, upon payment of all costs of transferring the same."

On August 9, 1956, the lease was renewed by the lessees, the term to expire on December 1, 1961. Prior to that time, on June 6, 1961, appellants brought the suit for declaratory relief, alleging that an actual controversy existed between the parties since respondents had notified appellants that they did not intend to retransfer the liquor license in compliance with the instant clause in the lease, despite appellants' announced desire to exercise the option. Respondents' answer denied that they were obligated to reconvey the license. On September 8, 1961, respondents noticed a motion for summary judgment. The motion was argued on September 25, and the judgment in favor of respondents ensued.

Business and Professions Code section 24076 reads as follows: "No licensee shall enter into any agreement wherein he pledges the transfer of his license as security for a loan or as security for the fulfillment of any agreement. Each application for the transfer of a license shall be accompanied by or contain a statement verified by both the transferor and transferee specifically stating that the transfer application or proposed transfer is not made to satisfy the payment of a

loan or to fulfill an agreement entered into more than ninety (90) days preceding the day on which the transfer application is filed with the department or to gain or establish a preference to or for any creditor of the transferor or to defraud or injure any creditor of the transferor. This statement shall become part of the transfer application, and any misrepresentation contained in the statement shall be considered the misrepresentation of a material fact."

The effective date of the statute is October 1, 1949,[1] and most of the previous cases occurring in state and federal courts involved the question of retroactivity of the statute in regard to leases which were either executed (*Pehau* v. *Stewart* (1952) 112 Cal.App.2d 90 [245 P.2d 692]; *Tognoli* v. *Taroli* (1954) 127 Cal.App.2d 426 [273 P.2d 914]; *Huffman* v. *Farros* (1960) 275 F.2d 350) or "extended" (*Cavalli* v. *Macaire* (1959) 159 Cal.App.2d 714 [324 P.2d 336]) prior to that date.

Other recent cases which have come to our attention involve slightly different factual situations. For example, the recent case of *Elmquist* v. *Lock* (1961) 194 Cal.App.2d 372 [15 Cal.Rptr. 447], which is relied on by respondents, is not strictly in point despite the similarity of the problem involved. In that case, a liquor license was issued in the names of *both* buyer and seller, with the understanding that upon payment of one-half of the purchase price of the real property and license, the sellers would take steps to remove their names. Conversely, if the buyers defaulted, they would have their names removed. The court therefore correctly concluded that the license was used as security in a conditional sale transaction, which is clearly a violation of the statute (pp. 375-376).

Likewise, in *Belle'Isle* v. *Hempy* (1962) 206 Cal.App.2d 14 [23 Cal.Rptr. 599], this court again found that a violation of the statute was involved and thus held that a contract to transfer a liquor license was unenforceable. In that case, the appellant sold his liquor store and transferred its license under a conditional sale agreement executed in 1953. The agreement provided that appellant was to retain title to the business as security for the payment of the balance of the purchase price and that, in the event of a default, the buyers would retransfer the license to the plaintiff or his

---

[1] It was first enacted into law as section 7.3 of the Alcoholic Beverage Control Act, but was placed in the Business and Professions Code in 1953 (*Belle'Isle* v. *Hempy* (1962) 206 Cal.App.2d 14 [23 Cal.Rptr. 599]).

successor. Since the parties undeniably attempted to use such a license as security in a security transaction, and the rights of the parties accrued well after the effective date of the statute, a violation was patent and the court so held.

It appears that the instant case is the first case before a state court involving 1) a lease, 2) which provides for a retransfer of the accompanying liquor license, and 3) which clearly involves factual circumstances occurring well after the effective date of the statute. However, a case very much in point was decided in the federal courts, and as the appellants note in their opening brief, the holding is squarely opposed to their position. *Citrigno* v. *Williams* (1958) 255 F.2d 675 involved a five-year lease of a cafe with accompanying liquor license. The lessees covenanted not to transfer the license from the leased premises. At the termination of the lease they were to retransfer the license to lessors.

Despite a restriction against assignment, the lessees assigned the lease and interest in the liquor license. The new lessees were eventually accepted after they covenanted with the lessors to carry out the terms of the original lease, and entered into a new agreement to that effect. The assignees of the lease eventually were adjudged bankrupt and the trustee in bankruptcy obtained an order to hold a sale of the liquor license despite the agreement in the lease to retransfer the license. The United States Court of Appeals, Ninth Circuit, framed the issue in the following words:

"The prime question in the case is whether or not Section 7.3 of the Alcoholic Beverage Control Act is applicable to the agreement made by the assignees to retransfer the license to appellants upon termination of the lease. If Section 7.3 is applicable to the agreement to retransfer, the agreement is unlawful and unenforceable and appellants have no claim to or interest in the license." (P. 678.) The court cited *Holt* v. *Morgan* (1954) 128 Cal.App.2d 113 [274 P.2d 915].

In holding that a new lease was entered into in 1953 when the assignment made by the original lessees was accepted by the lessors and a new arrangement drawn up, the court found that section 7.3 was directly applicable to the agreement to retransfer. In doing so, the court made some interesting points, which though not binding upon this court are certainly most helpful as guidelines (*Farmland Irrigation Co.* v. *Dopplmaier* (1957) 48 Cal.2d 208, 221 [308 P.2d 732]).

In countering an attempt by the appellants to limit the scope of the statute to a "pledge" of a license in the

strict sense of the word, the court stated at pages 678-679: "We cannot agree that Section 7.3 may be read so narrowly as appellants contend. Their strict rendering of its [sic] makes idle and meaningless the succeeding sentence of the section, which requires both transferor and transferee to submit to the licensing authority with the transfer application sworn statements specifically stating that the transfer application or proposed transfer is not made to satisfy an agreement entered into more than ninety days preceding the filing of the transfer application with the licensing authority. It is our view that all of the language of the section must be given effect and purpose if that is possible, and that the word 'pledge' must be interpreted in the light of this principle."

The court then pointed out that applicability of section 7.3 had already been before the state courts in California, but these cases all turned on the the retroactivity of the statute. The court mentioned *Saso* v. *Furtado* (1951) 104 Cal.App.2d 759 [232 P.2d 583]; *Etchart* v. *Pyles* (1951) 106 Cal.App.2d 549 [235 P.2d 427]; *Pehau* v. *Stewart, supra;* and *Tognoli* v. *Taroli, supra,* which are among the group of cases alluded to above. The court then made the following comment, "Significantly, however, in no case was it held or even suggested that Section 7.3 could not possibly be applicable to the retransfer agreement because no 'pledge' of the license was involved." (P. 679.) This principle is cited with approval in 33 Ops.Cal. Atty. Gen. 140-142, and appears to embody the proper principle to apply in the instant case.

In *Cavalli* v. *Macaire* (1959) 159 Cal.App.2d 714 [324 P.2d 336], this court had before it a case involving a 1945 lease of an establishment and transfer of the liquor license. The lease restricted the transfer of the license by the lessee to anyone except the lessor at the termination of the lease. This lease was renewed in 1950 and the terms remained basically unchanged. The appellants in that case contended that the agreement to retransfer could not be enforced because it contravened the provisions of Business and Professions Code section 24076.

The court avoided application of the statute by holding that the new lease was merely an "extension" of the old lease which dated back to 1945, and hence predated the statute. But the court in dictum provides the following direction: "We assume, without deciding, that the arrangement entered into by these parties for retransfer would be

illegal if made after the effective date of section 24076 of the Business and Professions Code." (P. 719.)

█ It is true that the provisions of the instant lease are framed somewhat differently from those in prior cases. Instead of merely calling for a retransfer of the lease, the lessor is given an option to repurchase for a fixed sum. However, the lease indicates that the license was "sold" to the lessees, presumably at the time of the lease and though the record and briefs are silent on the matter, it is reasonable to conclude that there was consideration for this sale. Presumably it was approximately $7,300, or the sum fixed by the lessors for the repurchase. It is common knowledge that a liquor license is a marketable product, and the fact that the lessors fixed a sum for the repurchase of the license at the termination of the lease is a strong indication that the parties were not dealing with the license in the capacities of buyer and seller in the ordinary sense. It appears that the "sale" was merely part and parcel of the lease agreement.

Furthermore, in the light of the undisputed facts, the parties hereto could not possibly comply with the following provision of section 24076: "Each application for the transfer of a license shall be accompanied by or contain a statement verified by both the transferor and transferee specifically stating that the transfer application or proposed transfer is not made . . . *to fulfill an agreement entered into more than ninety (90) days preceding the day on which the transfer application is filed* with the department . . ." (emphasis ours).

For the above reasons and on the authorities cited, it is our opinion that the agreement is unenforceable because it violates Business and Professions Code section 24076.

Judgment affirmed.

Kaufman, P. J., and Shoemaker, J., concurred.