[Sac. No. 7573.   In Bank.   July 14, 1966.]

MYRON  D.  GREVE  et al., Plaintiffs  and  Appellants,  **v.**
LEGER,  LIMITED  et al., Defendants  and  Respondents.

Orrin K. Airola for Plaintiffs and Appellants.

Stanley Mosk and Thomas C. Lynch, Attorneys General, E. G. Funke, Assistant Attorney General, N. Eugene Hill, Robert W. Jarvis and Clarence S. Brown, Deputy Attorneys General, Brobeck, Phleger & Harrison, Lane P. Brennan and James F. Wisner for Defendants and Respondents.

TOBRINER, J.—The present case involves the attempt by a corporate purchaser of premises licensed for the sale of alcoholic beverages to avoid the obligation it assumed in giving the seller an option to repurchase the licenses in the event of the purchaser's default on its undertaking to buy the premises. The purchaser urges the sole defense that Business and Professions Code section 24076 forbade its agreement to such an option and hence nullified the obligation it assumed. For the reasons set forth below, we have concluded that the statute affords the purchaser no such defense.

Plaintiffs seek relief from a judgment of dismissal following the sustaining of a general demurrer to their complaint without leave to amend. In that complaint plaintiffs alleged that the parties had concluded an agreement for the sale to Leger, Limited (hereafter defendant) of a hotel owned by the plaintiffs together with its liquor licenses. Plaintiffs further alleged that the parties subsequently entered into another written agreement by which defendant bound itself to keep the licenses on the premises and to refrain from selling them to third parties until it had performed its obligations to plaintiffs under the contract for sale of the hotel. Defendant also gave to plaintiffs

an option to repurchase the licenses for $5,000, the price paid by defendant to plaintiffs for the licenses. The agreement provided that plaintiffs could exercise the option only in the event defendant defaulted on its undertaking to purchase the hotel.[1]

Upon defendant's default on that undertaking, plaintiffs repossessed the hotel and tendered to defendant the price specified in the option for the repurchase of the licenses. When defendant refused the tender plaintiffs commenced the present action, seeking to enjoin defendant from selling the licenses to a third party and to compel defendant to transfer the licenses to them. At oral argument before the District Court of Appeal, counsel indicated that defendant had in fact sold the licenses to third parties. Accordingly, plaintiffs now ask leave to amend their complaint in order to seek damages for defendant's wrongful acts.

Defendant does not deny that it gave the option or that the condition precedent contained in it has transpired. Neither does defendant deny that it refused plaintiffs' tender of the option price. Defendant instead contends that section 24076 of the Business and Professions Code invalidates the very cession of the option and any obligation incident to it. As a second ground of defense defendant claims that since more than 90 days elapsed between the grant and the repudiation of the option, the agreement violates another portion of section 24076 of the Business and Professions Code. We consider each of the contentions seriatim.

In relevant part section 24076 provides that: "No licensee shall enter into any agreement wherein he pledges the transfer of his license as security . . . for the fulfillment of any agreement."[2] Ambiguity and vagueness enshroud both the word "pledge" and the phrase "security for the fulfillment of any agreement" as used in the statute.

---

[1] The relevant part of the agreement reads: "Second parties [defendant] further agree that in case default be made by them upon the indebtedness owing to first parties and it becomes necessary for first parties to repossess the property, that they will not attempt to sell or remove the licenses from the premises and that in such event the licenses will be transferred to the owner of said property under such repossession upon the payment to second parties of that amount that second parties have paid to first parties for the liquor licenses."

[2] The fact that the statute speaks only of undertakings by a "licensee" does not preclude its application to one who, like the present defendant, was not yet the licensee at the time he gave an undertaking to transfer the license. The policy of the statute extends to undertakings by prospective licensees as well as to undertakings by those already licensed. (*Holt v. Morgan* (1954) 128 Cal.App.2d 113, 116 [274 P.2d 915].)

A literal rendition of the word "pledge" produces an internal inconsistency in the statute. The sole distinguishing characteristic of a "pledge" is the present physical transfer of the property pledged. (Civ. Code, §§ 2986-2988; Black's Law Dictionary (3d ed.) p. 1368; *Brewster* v. *Hartley* (1869) 37 Cal. 15, 25 [99 Am.Dec. 237]; *Estate of Wittenberg* (1962) 202 Cal.App.2d 867, 874 [21 Cal.Rptr. 258].) If the word bears that meaning in section 24076, the phrase "pledges the transfer of his license" becomes a contradiction in terms. Moreover, a statute prohibiting the pledge of liquor licenses would be largely redundant since Business and Professions Code section 24046 precludes the physical removal of licenses from the licensed premises.

Faced with these anomalies, the courts have concluded that the statute cannot sustain a literal interpretation and that the word "pledge" must be regarded in its colloquial rather than its legal sense. (*Elmquist* v. *Lock* (1961) 194 Cal.App.2d 372, 376 [15 Cal.Rptr. 447]; *Citrigno* v. *Williams* (1958) 255 F.2d 675, 678-679.) In the absence of a more plausible interpretation of this language and in order to give effect to the section, we are compelled to accept this reading of "pledge" as embracing all promises or undertakings.

Ascertainment of the meaning to be ascribed to the second statutory phrase, "as security for the fulfillment of any agreement," presents an even more trying task. We start, at least, with certain basic premises. Ordinarily, holders of alcoholic beverage licenses may freely contract to transfer those licenses to other persons, subject, of course, to official approval of the transfer. Such contracts are valid and specifically enforcible. (Bus. & Prof. Code, § 24070; *Bell'Isle* v. *Hempy* (1962) 206 Cal.App.2d 14, 16 [23 Cal.Rptr. 599]; *Golden* v. *State of California* (1955) 133 Cal.App.2d 640, 644 [285 P.2d 49]; *Saso* v. *Furtado* (1951) 104 Cal.App.2d 759, 769-770 [232 P.2d 583].) Obviously section 24076 undertakes to qualify this otherwise unlimited contractual freedom to transfer licenses by prohibiting contracts for such transfers which afford "security" to one of the parties.

Defendant asks that in this context we give the word "security" an expanded and uncommon connotation wide enough to invalidate the instant contract. Yet, as we shall explain, we find no good reason to believe that the Legislature intended to forsake the more restricted and accepted understanding of "security" in favor of defendant's suggested extraordinary version.

■ In traditional usage, a "security" device is one which entitles the secured party to ownership of some specified fund or asset in the event the security-giver defaults on an underlying obligation. Such devices do not ordinarily contemplate that the secured party must give further substantial consideration in order to enforce his right to the "security." Moreover, foreclosure upon the "security" normally provides the secured party with an asset or fund out of which to satisfy his underlying claim against the security-giver. (See Black's Law Dictionary (3d ed.) p. 1595.) ■ This traditional concept of "security" would not embrace an option exercisable only upon payment of substantial additional consideration. Nor would it extend to an option which, upon performance, gives the option-holder no asset out of which to satisfy his underlying claim against the option-giver.

The word "security" may, however, be stretched to cover a far more extensive domain so that its boundaries include any agreement whose value to the parties is specially enhanced by the context in which it occurs. Whenever the performance of some undertaking is necessary to "secure" or preserve the value of some asset or some other agreement, we could possibly refer to the undertaking as one that has been given "as security." For example, a covenant by the seller of a business that he will not compete with the purchaser might be said to serve "as security" for the contract of sale since performance of the covenant is necessary to "secure" or preserve the value of the purchaser's interest.

Similarly, the lessor of premises licensed for the sale of alcoholic beverages who retains an option to repurchase the license from the lessee at the termination of the lease may be said to have preserved the option "as security" since the option "secures" or preserves the value of the lessor's remainder interest in the premises. Under this expanded definition of "security" the fact that the secured party cannot "foreclose" without paying a substantial additional consideration and that such foreclosure places in his hands no asset from which he could satisfy his claim against the giver of the security would not negate the presence of a "security" device.

Some courts have attributed this broad and unusual scope to the word "security" as used in section 24076. Thus in *Hammond* v. *Pasquini* (1963) 211 Cal.App.2d 540, 545 [27 Cal. Rptr. 208], the court held that an option given by the lessee of licensed premises which provided that the lessor could repur-

chase the license for $7,300 at the termination of the lease was a prohibited ''security'' transaction within the meaning of section 24076 because it was ''part and parcel'' of the lease arrangement. (See also *Citrigno* v. *Williams, supra,* 255 F.2d 675.)

Similarly, in *Elmquist* v. *Lock, supra,* 194 Cal.App.2d 372, 377, the court held that the statute rendered invalid an agreement by which the purchaser of licensed premises bound himself to ''do all things necessary to have his name removed'' from the license in the event he defaulted on the contract of purchase before paying half of the purchase price. (See also *Belle'Isle* v. *Hempy, supra,* 206 Cal.App.2d 14.)

Examination of the rationale underlying these decisions discloses a misunderstanding of the purpose of section 24076. In *Elmquist,* the decision on which the other District Courts of Appeal cases rely, the court declared its ground for invalidating the agreement in the following terms: ''If such an agreement were permitted, performance of it would vest in the person to whom performance was due, ownership of the license, regardless of his qualifications to be licensed. It is the purpose of section 24076 to prevent a transfer of ownership by any means other than the procedure, compliance with which would limit transfers to those who are qualified to hold licenses.'' (P. 377.)

Apparently the court erroneously assumed that performance by the purchaser of his undertaking ''to have his name removed from the license'' in the event of his default would automatically effect a transfer of the license without official approval. ■ Yet all licenses are issued only to specific individuals for use at specific locations (Bus. & Prof. Code, § 24040), and all transfers are subject to official investigation and approval in the same manner as the initial issuance of a license. (Bus. & Prof. Code, §§ 24070, 23958, 23987, 23988.) ■ Indeed, the omission of a provision for such approval in the private agreement of the parties does not affect the need for official sanction.

■ The requirement for such approval is an implied condition of all agreements for the transfer of alcoholic beverage licenses, whatever the context and whatever the nature of the consideration. (*Golden* v. *State of California, supra,* 133 Cal.App.2d 640, 644; *Saso* v. *Furtado, supra,* 104 Cal.App.2d 759, 765-769; *Campbell* v. *Bauer* (1951) 104 Cal. App.2d 740, 744 [232 P.2d 590]; *Leboire* v. *Black* (1948) 84 Cal.App.2d 260, 262 [190 P.2d 634].) In the present case the

Attorney General, representing the Department of Alcoholic Beverage Control, acknowledges that a transfer of the licenses from defendant to plaintiffs pursuant to the option would have been subject to official scrutiny and approval.

In light of our conclusion that the cited cases have incorrectly divined the purpose of section 24076 we cannot adopt the expansive reading which they have given that statute in response to their mistaken concept of its objective. Surely we should not ascribe to the Legislature an intent to outlaw all agreements for the transfer of licenses which serve to assure the value of some *other* asset or protect the integrity of some *other* agreement.

Although the option obviously played a part in the present transaction between the parties, we conclude that it did not function as a ''security'' device within the meaning of the statute. We recognize that plaintiffs might not have sold the hotel without the assurance that they could repurchase the licenses in the event they were compelled to repossess the hotel. To this extent, the agreement tended to ''secure'' or preserve the value of plaintiffs' interest in the hotel. We can conceive of few situations, however, in which an agreement to transfer a license does not serve as ''security'' in this attenuated sense. Even in the outright sale of premises and license, the agreement to transfer the license serves to ''secure'' or preserve the value of the purchaser's interest in the premises.

Thus we do not believe that the Legislature in using the word ''security'' in section 24076 intended to expand the meaning of that word beyond its ordinary limits. In our view the word does not embrace the agreement involved in the present case. That agreement did not confer upon plaintiffs an automatic right to retake the licenses upon defendant's default. It simply gave them an option to repurchase the licenses at the same price which defendant had paid for them, a price which cannot be deemed nominal. Nor would the exercise of the option have deposited in plaintiffs' hands an asset out of which they could satisfy their claim against defendant for its default on the contract to purchase the hotel. Since the agreement performed neither of the ordinary functions of a ''security'' we conclude that section 24076 does not invalidate the contract.[3]

---

[3]Defendant calls attention to that portion of the agreement between the parties in which defendant covenanted to retain the licenses on the premises until it had completed its purchase of the hotel. That covenant contains the following language: ''It is understood that the keeping of

To sustain its position defendant must place an extraordinary meaning upon the language of section 24076 in not one but two respects; defendant must ascribe a wide colloquial sweep to the word "pledge" and an even more doubtful reach to the word "security." Even if we accept defendant's invitation to engage in this undertaking to save the statute from self-contradiction as to the word "pledge" we find no good reason to do so as to the word "security." The proposed loose reading of this word does not achieve any statutory purpose; it does not save the statute from self-contradiction; it results only in freeing a defaulting defendant from its expressly assumed obligation and in defeating the legitimate expectations of the parties. We doubt that the Legislature intended such meaning; we see no justification for such semantic license for such doubtful ends.

As we have noted, defendant presents an alternative contention, invoking a portion of section 24076 which, in its present form, provides: "*No license shall be transferred* if the transfer is to . . . fulfill an agreement entered into more than 90 days preceding the date on which the transfer application is filed." (Italics added.) Since more than 90 days elapsed between defendant's grant and repudiation of the option, it urges that the 90-day provision affords it a defense to the present action.

Unlike the "security" portion of the statute previously considered, the 90-day provision does not *forbid* the parties from concluding an agreement which violates its terms but simply prohibits the *transfer* of licenses pursuant to such an agreement. The question thus arises whether on the 90th day following the inception of a contract for transfer of a license that contract becomes illegal or whether, instead, the statute merely forbids the transfer of a license after the 90th day, leaving intact the other rights of the parties.

---

the liquor licenses on the property aforesaid is necessary for the security of the [seller]." Defendant contends that the presence of the word "security" in this covenant indicates that the parties contemplated that the license repurchase option would also serve a "security" purpose.

We do not find this contention compelling. With equal cogency it could be argued that the absence of any reference to "security" in the repurchase option together with the presence of such a reference in the covenant above set forth reflected the belief of the parties that the option, unlike the covenant, served no "security" function.

In any event, the issue is not governed by the assumptions of the parties but by the legal and economic realities of the transaction. The parties are not free to control the application of section 24076 by the labels which they choose to place upon or omit from their transactions.

This court recently confronted a parallel question in *Harriman* v. *Tetik* (1961) 56 Cal.2d 805, 811-812 [17 Cal.Rptr. 134, 366 P.2d 486]. That case involved the application of Business and Professions Code section 24073, which provides: *"No . . . license . . . shall be transferred* unless before the filing of the transfer application . . . the licensee or the intended transferee records . . . a notice of the intended transfer [containing] (e) An agreement between the parties . . . that the consideration for the transfer . . . is to be paid only after the transfer is approved by the department. . . ." (Italics added.) In the *Harriman* case, not only had the parties failed to record notice of such an agreement; they had failed even to conclude such an agreement, and they had in fact caused the consideration to change hands prior even to filing an application for transfer. Accordingly, the defendant invoked section 24073, urging that the parties' patent violations of its requirements rendered the contract illegal.

This court unanimously held the contract "not illegal." It noted that the statute provides only that "No license shall be *transferred . . ."* (italics added) when the parties violate its terms. That provision, the court concluded, was not intended to render nonconforming agreements illegal, but only to prevent the transfer of licenses in satisfaction of such agreements.

The statute involved in the present case is indistinguishable in form and effect from the one examined in *Harriman*. It too provides that "No license shall be transferred . . ." in the event the parties violate its terms. Indeed, at the time of the transactions involved in the present case, the statute did not even forbid such transfers but simply required the parties to submit a statement that the transfer was not in satisfaction of an agreement more than 90 days old, thus affording the department the *option* of suspending the license in the event of the falsity of this statement. (Bus. & Prof. Code, § 24200, subd. (c).) ▆▆▆ Accordingly, we conclude that the 90-day provision of section 24076, although it undoubtedly precludes specific enforcement of the option agreement, does not render that agreement illegal and hence affords no defense to an action for damages.

In light of our determination that no portion of section 24076 bars plaintiffs from seeking to recover damages for the harm sustained as a result of defendant's dishonoring of the option, we need not determine whether defendant's covenant to retain the licenses on the premises, an unquestionably valid

undertaking, can be severed to serve as the basis for a separate cause of action.

We reverse the judgment of dismissal, and direct the trial court to give plaintiffs leave to amend their complaint in conformity with the views expressed herein. Each party will bear its own costs on appeal.

Peters, J., Peek, J., and Regan, J. pro tem.,* concurred.

BURKE, J.—In my opinion the Legislature has clearly and unequivocally demonstrated its intent (1) to forbid agreements such as the one here in issue, and (2) to render any such agreement unenforceable either by way of specific performance or by recovery of damages for its breach. Following three decisions of the District Court of Appeal and one federal case holding comparable agreements to be unlawful and unenforceable, the statute (Bus. & Prof. Code, § 24076) was amended and strengthened, rather than the contrary, thus unmistakably showing legislative intent to approve the interpretations and applications of the statute which appear in those cases.

In *Citrigno* v. *Williams* (9th Cir. 1958) 255 F.2d 675, lessors of business premises, in connection with the lease had a liquor license transferred to the lessees, who covenanted that they would not transfer the license from the leased premises and that upon termination of the lease they would execute such papers as might be required to effect retransfer of the license to lessors. Upon bankruptcy of lessees' successors in interest, the court permitted the trustee to sell the license, stating (p. 678) that under section 24076 the agreement "is unlawful and unenforceable and [lessors] have no claim to or interest in the license." The court further noted (p. 679) that "any loss they suffer results from their own violation of a public policy statute of California."

In *Elmquist* v. *Lock* (1961) 194 Cal.App.2d 372 [15 Cal. Rptr. 447], plaintiffs leased to defendants certain restaurant and cocktail premises and sold defendants the equipment and liquor license on conditional sale contract. The license was subsequently issued in the names of plaintiff George M. Elmquist and defendant Del R. Lock, and the parties agreed that upon payment of half the purchase price of the equipment and the license the plaintiffs would take steps to remove Elmquist's name, but that if buyers defaulted they would have

*Assigned by the Chairman of the Judicial Council.

Lock's name removed. Defendants did default and plaintiffs were restored to possession of the property, and then sought to quiet title to the liquor license. Defendant cross-complained alleging payment for the license. Recovery was denied to each party, with the holding that section 24076 made the agreement unenforceable.

In *Belle'Isle* v. *Hempy* (1962) 206 Cal.App.2d 14 [23 Cal. Rptr. 559], plaintiff sold his liquor store and transferred its liquor license under a conditional sale contract which provided that plaintiff was to retain title to the business as security for payment of the balance of the purchase price and that if buyers defaulted they would transfer the license back to plaintiff or his nominee. Buyers' business failed and was assigned to defendant as trustee for their creditors. The defendant sold the license and held the proceeds pending determination of plaintiff's claims. The court held that inasmuch as the contract violated section 24076 rights thereunder were unenforceable with respect to the liquor license.

In *Hammond* v. *Pasquini* (Jan. 3, 1963) 211 Cal.App.2d 540 [27 Cal.Rptr. 208], plaintiffs sought a declaration that defendants were obligated to retransfer a liquor license to them under a lease clause which stated: "IT IS FURTHER AGREED by and between the parties hereto, that in consideration of the Lessors making this lease, that at the end of the term of this lease, or prior termination thereof, the Lessors shall have the option to purchase the liquor license sold by the Lessors to the Lessees for the sum of . . . $7,300.00. . . ." Citing *Citrigno, Elmquist* and *Belle'Isle, supra,* the court held the agreement violative of section 24076 and accordingly unenforceable. The court pointed out (p. 545) that the "sale" or option to repurchase was part and parcel of the lease agreement, and, further, that the parties "could not possibly comply with" the requirement of section 24076 as then cast that upon applying for transfer of a license a verified statement by both transferor and transferee be submitted stating that the proposed transfer is not made "to fulfill an agreement entered into more than ninety (90) days preceding" filing of the transfer application.

Thereafter in 1963 the Legislature amended section 24076[1]

---

[1] Prior to the 1963 amendment section 24076 in its entirety read as follows: "No licensee shall enter into any agreement wherein he pledges the transfer of his license as security for a loan or as security for the fulfillment of any agreement. Each application for the transfer of a license shall be accompanied by or contain a statement verified by both

by deleting the two sentences requiring and referring to the verified statement by transferor and transferee, and by substituting in place thereof the following unequivocal declaration: *"No license shall be transferred if* the transfer is to satisfy a loan or *to fulfill an agreement entered into more than 90 days preceding the date on which the transfer application is filed,* or to gain or establish a preference to or for any creditor of the transferor, or to defraud or injure any creditor of the transferor." (Italics added.)

" 'It is a cardinal principle of statutory construction that where legislation is framed in the language of an earlier enactment on the same or an analogous subject, which has been judicially construed, there is a very strong presumption of intent to adopt the construction as well as the language of the prior enactment. . . .' " (*Holmes* v. *McColgan* (1941) 17 Cal.2d 426, 430 [2] [110 P.2d 428], citing *Union Oil Associates* v. *Johnson* (1935) 2 Cal.2d 727, 734-735 [2] [43 P.2d 291, 98 A.L.R. 1499].)

"Statutes are to be interpreted by assuming that the Legislature was aware of the existing judicial decisions. [Citation.] Moreover, failure to make changes in a given statute in a particular respect when the subject is before the Legislature, and changes are made in other respects, is indicative of an intention to leave the law unchanged in that respect." (*Alter* v. *Michael* (1966) *ante,* pp. 480, 482 [50 Cal.Rptr. 553, 413 P.2d 153], citing *Kusior* v. *Silver* (1960) 54 Cal.2d 603, 618 [7 Cal.Rptr. 129, 354 P.2d 657]; see also *Bellman* v. *County of Contra Costa* (1960) 54 Cal.2d 363, 367-368 [5 Cal.Rptr. 692, 353 P.2d 300]; *Cole* v. *Rush* (1955) 45 Cal.2d 345, 355-356 [289 P.2d 450, 54 A.L.R.2d 1137].)

Here the Legislature did change the statute, but the change strengthened and made more positive the provisions which the courts had theretofore held to forbid and render unenforceable provisions for transfer or retransfer of licenses under agreements such as the one now before us. Legislative approval has thus been firmly indicated of the interpretation and applica-

---

the transferor and tranferee specifically stating that the transfer application or proposed transfer is not made to satisfy the payment of a loan or to fulfill an agreement entered into more than ninety (90) days preceding the day on which the transfer application is filed with the department or to gain or establish a preference to or for any creditor of the transferor or to defraud or injure any creditor of the transferor. This statement shall become part of the transfer application, and any misrepresentation contained in the statement shall be considered the misrepresentation of a material fact."

tions of the statute made by the cases discussed hereinabove. The holdings of those cases should be followed and the judgment of the trial court, sustaining demurrer without leave to amend, should be affirmed.

Traynor, C. J., and McComb, J., concurred.